868 P.2d 318

**In the Matter of a Suspended Member of the State Bar of Arizona, Harry Schiller REDEKER, Jr., Respondent.**

No. SB–94–0005–D.
Comm. Nos. 90–1885, 90–2005, 90–2208, 91–0906, 91–1136 and 91–1155.

Supreme Court of Arizona.
Before the Disciplinary Commission.

Feb. 3, 1994.

Treasure VanDreumel, Co-State Bar Counsel, Nancy A. Greenlee, Co-State Bar Counsel, and Harriet L. Turney, Chief Bar Counsel, State Bar of Arizona, for the State Bar.

## JUDGMENT AND ORDER

This matter having come on for hearing before the Disciplinary Commission of the Supreme Court of Arizona, it having duly rendered its decision and no timely appeal therefrom having been filed, and the Court having declined sua sponte review,

IT IS ORDERED, ADJUDGED AND DECREED that **HARRY SCHILLER RE-DEKER, JR.,** a suspended member of the State Bar of Arizona, is hereby disbarred for conduct in violation of his duties and obligations as a lawyer, as disclosed in the commission report attached hereto as Exhibit A.

IT IS FURTHER ORDERED that **HARRY SCHILLER REDEKER, JR.** shall pay restitution in the amount of $350.00 to Eva Fitzgerald.

IT IS FURTHER ORDERED that Respondent shall comply with all applicable provisions of Rule 63, Rules of the Supreme Court of Arizona, and shall promptly inform this Court of his compliance with this Order as provided by Rule 63(d), Rules of the Supreme Court of Arizona.

IT IS FURTHER ORDERED **HARRY SCHILLER REDEKER, JR.** shall be assessed the costs of these proceedings in the amount of $5,840.13.

---

EXHIBIT A

BEFORE THE DISCIPLINARY COMMIS-SION

OF THE

SUPREME COURT OF ARIZONA

Comm. Nos. 90–1885, 90–2005, 90–2208, 91–0906, 91–1136, and 91–1155

In the Matter of

Harry Schiller Redeker, Jr.,

a Suspended Member of the

State Bar of Arizona,

Respondent.

*DISCIPLINARY COMMISSION REPORT*

*Filed Oct. 18, 1993*

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on September 11, 1993, for oral argument, pursuant to Rule 53(d), R.Ariz.Sup.Ct. The Commission considered the Hearing Committee's recommendation of disbarment. Respondent objected to the Hearing Committee's recommendation.

### *Decision*

By a concurrence of the eight members present,[1] the Commission adopts the recommendation of the Hearing Committee that Respondent be disbarred and that he make restitution to the family of Client A in the amount of $350. The Commission also unanimously adopts the findings of fact and conclusions of law of the Hearing Committee.

### *Facts*

The amended complaint in this matter contains eleven counts, which address Respondent's dealings with six clients, his repeated failure to cooperate with the State Bar, and his prior disciplinary sanction.

Counts One, Five, Six, and Nine of the complaint are quite similar, in that each arises from what can only be described as

---

1. Commissioners Bosse and Bonwell did not participate in these proceedings. P. Michael Drake, of Tucson, participated as an ad hoc member.

Respondent's sloppy handling of the four clients' cases. In every case, Respondent provided either no written fee agreement or an agreement that was unclear and vague, and he became extremely difficult to reach after receiving his retainer or fee. In addition, in each of the four cases, the client and Respondent later disagreed as to exactly what Respondent had been retained to do. The Committee found that, while this conduct was, at the very least, sloppy, and illustrated Respondent's cavalier attitude about his responsibility toward his client, it did not, in and of itself, rise to the level of an ethical violation.

In each of the four cases, however, Respondent also failed to keep the client even minimally informed as to the progress of the case, refused to respond to telephone calls and letters from clients, and made virtually no attempt to clear up the confusion that each client was clearly experiencing over Respondent's handling of the case. In Count One, Respondent filed numerous motions to continue without the knowledge or consent of his client, and failed to provide the client with the depositions of witnesses until he and the client were outside the courtroom on the morning of the trial. In Count Five, which involved two clients who were in Germany and Seattle, Respondent would not respond to the clients' long distance telephone calls or letters, which was their only means of contacting Respondent. In Count Six, after repeated unsuccessful attempts to contact Respondent, the client received a letter of withdrawal from Respondent. It was through that letter that the client learned that his case was set for dismissal in two weeks. Respondent had never informed the client of the pending dismissal. Although there was a fee agreement provided to the client in Count Nine, exactly what the scope of Respondent's representation was to be is, again, in dispute. In the fee agreement, the description of the services to be performed was stated only as "harassment." Respondent never filed a suit on behalf of this client, and she finally terminated his services. The Committee found that Respondent's handling of these cases violated ER 1.4 and, in Count Six, ER 1.16, by continually ignoring the clients and by abandoning his efforts on one client's behalf without attempting to protect his interests.

The count which most concerned the Hearing Committee was Count Eight, which concerns Respondent's retention on August 8, 1990, by a woman ("Client A") and her mother ("Client B") to draw up a trust to hold the proceeds of a life insurance policy insuring the life of Client A, who was suffering from a terminal illness. The purpose of the trust was to ensure that Client A's ex-husband did not squander money that she wanted to go toward the benefit and support of her minor daughter.

After their initial meeting, Respondent called Client A on both August 12 and August 13 to inform her that he had prepared the trust, but no one answered the telephone. Client A died on August 14. On August 21, Respondent, Client A's brother and sister-in-law, and a notary public held a meeting, at which the sister-in-law signed Client A's name to the trust documents. Those documents were then back-dated to the date of Client A's death and were notarized by the notary public.

While the above facts are undisputed, Respondent's version of many aspects of this matter differs from that of Client B and her family. Client B states that she informed Respondent at the outset that time was of the essence, as her daughter had only a few days to live; Respondent states he was told that she had four to six months to live. Client A's brother states that, when he informed Respondent of his sister's death and requested a refund of the $1,850 fee, Respondent told him there was a way the trust could still be effective, and set up the evening meeting himself. Respondent denies that he directed the forgery, and states that the family knew what they were doing and volunteered to do it in order to prevent Client A's ex-husband from appropriating money intended for the minor daughter. Client A's brother, however, states that Respondent specifically told them to make sure the forgeries and false notarizations remained confidential, so that no one would ever know that the documents had been back-dated. Although Respondent misrepresented his

knowledge of the circumstances surrounding the execution of the documents and his role therein numerous times during the disciplinary process, Respondent now acknowledges responsibility for his part in the matter. He also admits that he sent the forged documents to the insurance company, fully aware that the signatures were not those of Client A. Respondent explains that he was only trying to help the family carry out Client A's last wishes.

After sending the trust documents to the insurance company, Respondent then either failed or refused to handle Client A's probate matters and refused to communicate with her family concerning the administration of her affairs. The Committee notes that there was some discussion as to whether this trust was ever really necessary, since the existing divorce decree already provided for the disposition of the proceeds of the life insurance policy; however, it found insufficient evidence to make any findings on this point. In the end, the insurance proceeds were administered through a conservatorship administered in California. Respondent did not return any of the fee to Client A's family.

The Committee found that Respondent's actions in this matter violated ER 1.4, ER 8.1(a), and ER 8.4(c).

Interestingly, the matter involving Client A was the only matter in which Respondent cooperated with the State Bar. In each of the other five matters addressed in the complaint, Respondent evidenced a lack of respect for the seriousness of the complaints being made against him by consistently and continually failing to respond to the State Bar's inquiries and complaints.[2] Respondent later submitted a blanket explanation for his failure to cooperate in these matters, which stated that he had a number of personal, professional, and health problems during that time period which kept him from responding in a timely fashion. However, the Committee notes that there is no evidence in the record of any communication offering that explanation to the State Bar, or of any re-

quests for additional time to respond. The Committee found this conduct violated ER 8.1(b) and Supreme Court Rule 51(h) and (i).

### Procedural History

The Committee included a procedural history in its report detailing Respondent's conduct during the formal proceedings in this matter. That history shows that Respondent repeatedly agreed to cut-off dates and deadlines and then failed to respond by the agreed-upon dates, and requested extensions and continuances at virtually every stage of the proceedings, often at the last minute. Because that history provides such a clear characterization of Respondent's attitude toward these proceedings, the Commission believes a restatement of the procedural history is in order.

The formal complaint was filed on April 6, 1992. Although Respondent accepted service of the complaint on April 13, he failed to answer in a timely fashion, and a notice of failure to answer was filed. On June 12, one week after the Order Deeming the Complaint Admitted was filed, Respondent filed his response to the complaint, without explanation as to its tardiness. A prehearing conference was held on July 22 to address Respondent's late response, at which both parties agreed upon specific dates for filing a joint pretrial statement and for a final hearing.

On August 25, the State Bar filed a motion to amend the complaint to include two additional counts. A few days later, Respondent telephoned the Committee chairman requesting an extension until September 8 to file a response to the motion, stating he had retained an attorney to represent him in the disciplinary proceedings. Although he was granted an extension until September 14, no response was filed, and the motion to amend the complaint was granted. The hearing date was also reconfirmed for October 20, 1992.

On October 5, Respondent filed a motion to continue all proceedings, stating that his attorney was unable to represent him and that he needed time to find other counsel. A

---

2. This conduct is charged in Counts Two, Four, Five, Seven, and Ten. The Commission notes that, ironically, Count Four addresses Respon-

dent's failure to cooperate with the investigation into the allegations contained in Count Three, which was dismissed by the Committee.

second prehearing conference was then scheduled for October 13, at which all pending matters were discussed and all issues concerning continuances, disclosure dates, and discovery cut-off were resolved. Respondent was given until October 27 to retain counsel and answer the amended complaint. Respondent filed his answer on October 27.

The case was then continued at the request of the State Bar, and prehearing deadlines were extended, with the final prehearing conference scheduled for January 6, 1993. Several hours before the time set for the January 6 hearing, Respondent faxed and mailed a motion to continue all matters because of his health. Upon receipt of the motion, the chairman of the Committee called Respondent's office to request telephonic argument of the motion, but was advised that Respondent was attending a luncheon. Respondent never returned the chairman's call.

The Committee filed an order the following day denying Respondent's motion, and setting dates for the filing of disclosure statements, Respondent's deposition by the State Bar, and the final hearing. Respondent attended the deposition, but when he failed to file a disclosure statement, the State Bar filed a motion for sanctions. In response, the Committee stated that if Respondent did not file a disclosure statement on or before February 25, it would apply for an order transferring Respondent to disability inactive status. Respondent submitted his disclosure statement on February 25, and the final hearing was held on March 1, March 2, and March 3.

After objecting to the Hearing Committee's recommendation, Respondent requested a 90–day continuance of the hearing before the Disciplinary Commission, stating he had had insufficient notice, and indicating, once again, that he was attempting to obtain counsel. The motion was denied, although the Commission continued the hearing for 60 days. Although Respondent was notified of the continued hearing before the Commission, he filed no statement on review, and only the State Bar appeared at oral argument.

■ The Commission agrees with the Hearing Committee's findings that Respondent violated ER 1.4 by consistently refusing or failing to communicate with clients; ER 1.16 when he terminated his representation of a client without taking steps reasonably practical to protect the client's interests; ER 8.1(a) when he repeatedly lied to the State Bar about his involvement in the forgery of Client A's signature; ER 8.4(c) when he counseled, encouraged, and participated in the preparation of the forged document and sent it to others intending for them to rely upon it; and ER 8.1(b) and Rule 51(h) and (i) when he failed to respond to and cooperate with the State Bar's investigations.

In determining the appropriate sanction, the Court looks for guidance in the American Bar Association's *Standards for Imposing Lawyer Sanctions*. *In re Tarletz*, 163 Ariz. 548, 789 P.2d 1049 (1990). The Commission uses that guideline, as well.

Respondent's failure to communicate with his clients can be classified as a lack of diligence. Standard 4.42 provides for suspension when a lawyer engages in a pattern of neglect and causes injury or potential injury to a client. Respondent repeatedly accepted representation of clients, then failed to keep them informed of the progress of their cases by refusing to return their phone calls or answer their letters. While the fact that Respondent may have been experiencing personal and professional problems at the time is unfortunate, it does not serve as an excuse for his complete failure to involve his clients in the progress of their own cases.

Respondent's most troubling misconduct can be characterized as a failure to maintain personal integrity, which is addressed by Standard 5.1. Standard 5.11 provides for disbarment when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. Respondent participated in the preparation of a forged document and sent it to others, intending that they rely upon it. He also repeatedly lied to the State Bar and the Hearing Committee. One of the most

basic professional obligations to the public is the pledge to maintain personal honesty and integrity.[3] Respondent has clearly breached that duty.

The Commission also reviewed Standards 9.32 and 9.22, which list factors in aggravation and mitigation. In mitigation, the Commission agrees with the Committee's finding that Respondent had no selfish motive, he was experiencing personal problems, and he expressed remorse, albeit for the first time before the Hearing Committee. The Commission finds the aggravating factors greatly outweigh those in mitigation, however. In aggravation, the Committee found a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and a prior disciplinary sanction for very similar behavior. In addition, the Commission finds Respondent's apparent determination not to cooperate throughout the disciplinary process and his repeated false statements to both the State Bar and the Committee to be weighty aggravating factors.

This was a somewhat difficult matter for the Committee and Commission to evaluate. They believe that Respondent's motive for his sloppy procedures and failure to communicate with his clients was not a selfish one. Rather, Respondent was apparently overwhelmed by events in his personal and professional life. Even the most egregious conduct, that involving the forged documents, arose out of Respondent's misguided efforts to accomplish what he knew were his client's wishes. However, the Commission and Committee have no choice but to find that the actions Respondent took were unacceptable. His unavailability to his clients caused extreme concern and mistrust, and his attempts to comply with a deceased client's wishes were only accomplished through his participation in a forgery.

According to the ABA Standards, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be *greater than the sanction for the most serious misconduct.*" (emphasis

added). 1991 *ABA Standards,* Theoretical Framework, p. 6. In the instant case, while Respondent's lack of communication with his clients may warrant only a suspension, the Standards provide for disbarment for his conduct surrounding the signing of the trust documents. The duty to avoid conduct involving dishonesty, fraud, deceit, or misrepresentation is perhaps the most fundamental ethical duty of a lawyer and is correspondingly supremely important. *In re Fresquez,* 162 Ariz. 328, 783 P.2d 774 (1989).

The Commission agrees with the Committee that disbarment is the only sanction that will fulfill the purpose of lawyer discipline, which is to deter others and protect the public, *In re Kersting,* 151 Ariz. 171, 726 P.2d 587 (1986), and to give the public confidence in the integrity of the bar, *In re Loftus,* 171 Ariz. 672, 832 P.2d 689 (1992). The Commission so recommends. The Commission also recommends that Respondent make restitution to the family of Client A in the amount of $350, which represents the fee Client A paid for assistance in matters subsequent to the drafting of the trust, which were not performed.

RESPECTFULLY SUBMITTED this 16th day of October.

/s/ Mark D. Rubin

Mark D. Rubin, Vice Chair
Disciplinary Commission

---

3. Commentary, Standard 5.11.