832 P.2d 689

**In the Matter of a Member of the State Bar of Arizona, William C. LOFTUS, Respondent.**

**No. SB–88–0010–D.**
**Disc. Comm. Nos. 5–2104, 86–1311, 86–1346, 87–0979.**

Supreme Court of Arizona,
En Banc.

June 18, 1992.

Stewart & McLean by William H. McLean, Phoenix, for respondent.

Yigael M. Cohen, Bar Counsel, State Bar of Arizona, Phoenix.

## OPINION

SHELLEY, Court of Appeals Judge *, Division One.

The Disciplinary Commission of the Supreme Court (Commission) recommended that William C. Loftus (Respondent) be sus-

---

\* NOTE: The Honorable Melvyn T. Shelley was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Constitution article VI, section 20.

pended for a period of two years with credit for time spent on voluntary suspension. Respondent filed a timely appeal from the recommendations of the Commission. We have jurisdiction pursuant to Rule 53(e), Arizona Rules of the Supreme Court.

## FACTS AND PROCEDURAL BACKGROUND

Respondent was admitted to the practice of law in Arizona in 1962. He later began abusing alcohol and, as a result, neglected his law practice. The State Bar started receiving complaints about Respondent in 1985 and tried to correspond with him about these matters. Respondent failed to cooperate with the State Bar and, in December 1986, complaint no. 5–2104 was filed against him in connection with his representation of the administratrix of an estate. The complaint alleged that (1) Respondent did not communicate with his client and other heirs despite repeated inquiries; (2) Respondent misrepresented his efforts to obtain information regarding the assets of the estate and continued his representation after he had been discharged; and (3) Respondent failed to appear for a hearing concerning the case. The complaint charged violations of Rule 29,[1] Arizona Rules of the Supreme Court, DR 1–102(A)(5) (conduct prejudicial to administration of justice), DR 1–102(A)(4) (conduct involving dishonesty), DR 2–106 (legal fees); Rule 42, Arizona Rules of the Supreme Court, ER 8.4(a), (c), and (d) (misconduct) and ER 1.16(a)(3) and (d) (withdrawal from representation); and Rule 51(h), Arizona Rules of the Supreme Court (failure to cooperate with disciplinary process).

Respondent failed to answer the complaint, and the allegations were deemed admitted. See rule 51(h), Arizona Rules of the Supreme Court. A hearing was held, and the Bar Hearing Committee (Commit-

---

1. Respondent's conduct occurred prior to and after February 1, 1985. The Code of Professional Responsibility applies to conduct occurring prior to February 1, 1985, and the Rules of Professional Conduct apply to conduct after that date.

tee) issued its report recommending a 21–month suspension. Respondent did not appeal. When Respondent failed to appear before the Commission, it recommended that he be disbarred. Respondent then allowed his dues to become delinquent, and he was suspended in June 1987. He remained on self-imposed suspension until May 1990, when he was reinstated.

On review to this court Respondent, through counsel, objected to the findings and recommendations of the Committee and Commission, and requested a hearing on the merits. He asserted that his failure to respond was the result of alcoholism. On October 19, 1988, this court issued a remand order stating:

> The Commission, or, at its option, the … Committee …, *may consider whether respondent should be permitted to present evidence* of the type described in his objections, and, if so, the Commission or Committee may hear such evidence and make such further findings or recommendations as are appropriate. [Emphasis added.]

The Commission remanded the matter to the Committee. On December 6, 1988, the Committee allowed Respondent to file a memorandum justifying why a hearing on the merits should be conducted.

The Committee granted a hearing but limited the evidence it would consider, stating in pertinent part:

> [T]he scope of the hearing granted *does not include controverting evidence* on the operative facts alleged and found…. [T]he Committee feels that Respondent seeks to be heard in the nature of confession and avoidance, rather than to dispute the facts of the complaint. Accordingly, the issues to be heard are so limited. [Emphasis added.]

Respondent did not object to this limitation.

Thereafter, a 9–count amended complaint was filed. The Committee subsequently dismissed counts 3, 4, and 5. The Committee, after a hearing, recommended that Respondent be suspended retroactively for one year, and receive probation for one year.

After its hearing, the Commission adopted the Committee's findings that, as to count 1 (the estate matter), Respondent violated the ethical rules as alleged in the complaint. With regard to counts 2, 6, 7, and 9, the Commission adopted the Committee's findings that Respondent violated ER 1.1 (competent representation), ER 1.3 (reasonable diligence), ER 1.4 (communication with clients), ER 8.1(b) (failure to disclose information to the State Bar), and Rule 51(h) and (i) (failure to furnish information or respond to a bar inquiry, and refusal to cooperate with the State Bar). Respondent did not file objections.

The Commission recommended a two-year retroactive suspension plus one year probation based on a pattern of misconduct and the harm caused.

## DISCUSSION

 In disciplinary proceedings, this court acts as an independent "trier of both fact and law." *In re Lincoln*, 165 Ariz. 233, 235, 798 P.2d 371, 373 (1990) (quoting *In re Neville*, 147 Ariz. 106, 108, 708 P.2d 1297, 1299 (1985)). Although we give serious consideration to findings of the Committee and the Commission, "we must be persuaded by clear and convincing evidence that [R]espondent committed the alleged violations." *Lincoln*, 165 Ariz. at 235, 798 P.2d at 373 (citing Rule 54(c)). Further, we bear the ultimate responsibility for determining the appropriate sanction. *Lincoln*, 165 Ariz. at 235–36, 798 P.2d at 373–74 (citing *Neville*, 147 Ariz. at 115, 708 P.2d at 1306).

The facts before us are undisputed. Respondent, while suffering from alcoholism, committed various ethical violations.

 The Committee found that in the Spring of 1987, Respondent, as a result of alcoholism, was unable to participate in his own defense. Therefore, Respondent asserts that due process requires that count 1 be remanded for a hearing on the merits. We disagree.

After remand by this court, Respondent did not offer any evidence in his memorandum to refute the allegations in count 1.

He did not object to the Committee's rulings limiting the issues to be heard; nor did he object to the report before the Committee and the Commission. Respondent told the Commission, "[A]s to the [Committee's] findings of fact and conclusions of law, we have absolutely no objections to those; we concur and agree with them." Respondent thus waived the right to a hearing on the merits as to count 1. He was not denied due process.

▮ Respondent agrees that during 1986 and 1987, while suffering from alcoholism, he committed ethical violations. He acknowledges that an appropriate sanction should be imposed upon him. However, he asserts that the sanction recommended by the Commission is excessive. He believes that his self-imposed period of suspension, the lack of significant harm to any of his former clients, and the fact that he was suffering from alcoholism when the violations occurred, justify only the imposition of censure or, at most, a retroactive suspension of less than 6 months coupled with a period of monitoring.

Respondent further asserts that his rehabilitation militates in favor of sanctions substantially less than those recommended by the Commission. We disagree. In *In re Rogers*, 100 Ariz. 214, 412 P.2d 710 (1966), we held that multiple complaints relating to cumulative misconduct raise serious doubts about a lawyer's fitness to practice law and justify a more severe sanction than an isolated act of neglect or misconduct. Respondent will be credited for time spent in his self-imposed suspension. This credit will allow him to continue practicing law without further interruption.

Respondent asserts that a two-year suspension will send a message to alcoholic lawyers that a voluntary suspension and rehabilitation will not benefit them in disciplinary proceedings. We disagree. Were it not for Respondent's self-imposed suspension and rehabilitation our sanction likely would have been greater than that we imposed. One of the objectives of bar discipline is to give the public confidence in the integrity of the bar. The sanction we are imposing best serves this objective.

## PROPORTIONALITY

Respondent asserts that a two-year suspension is disproportionate to the sanctions imposed in *Hoover, Rivkind,* and *Morris.* In *In re Hoover,* (Hoover I), 155 Ariz. 192, 745 P.2d 939 (1987), and *In re Hoover,* (Hoover II), 161 Ariz. 529, 779 P.2d 1268 (1989), Hoover misappropriated substantial sums from one client and fraudulently billed for personal expenses. After the defalcations were discovered, apparently in 1984, he voluntarily suspended practice and sought medical treatment for a mental disease known as bipolar manic depressive disorder.

Hoover was suspended for a period of 6 months without credit for time previously spent in voluntary suspension. Hoover had made full restitution and his clients, including those damaged by his conduct, did not favor imposition of discipline. In spite of the lengthy self-imposed suspension, Hoover was given an additional 6 months suspension. Because he had resumed his practice, this required him to notify his clients of his suspension and to once again stop practicing law. He was also required to apply for reinstatement at the time permitted by Rule 71(c) pursuant to the procedures prescribed therein, and if reinstated to be on a two-year probation.

In contrast, Respondent's suspension will be entirely retroactive. He will not have to seek reinstatement. His practice will not be interrupted. This will avoid additional harm to his practice and to his reputation. Mental illness, whether it is a result of alcoholism or otherwise, is not sufficient to preclude the imposition of sanctions.

In *In re Rivkind,* 164 Ariz. 154, 791 P.2d 1037 (1990), Rivkind was convicted of attempted possession of cocaine. He was placed on probation, and his license to practice law was revoked. Thereupon, Rivkind ceased all legal practice. This court placed him on interim suspension on November 6, 1986. On September 15, 1988, this court terminated his interim suspension. Rivkind overcame his addiction. On May 10, 1990, this court imposed a two-year

suspension retroactive to September 18, 1986, the date he stopped practicing law. In spite of Rivkind's use of cocaine, his professional performance was not adversely affected. In this case, Respondent's ethical violations involved three clients.

In *In re Morris*, 164 Ariz. 391, 793 P.2d 544 (1990), Morris pled guilty to the federal offense of misprision of felony. As a result, this court entered an order of interim suspension on February 3, 1989. Morris knew that his client and others had committed criminal offenses. His offense was failure to take affirmative steps to report those offenses. He fully cooperated with an I.R.S. investigation of his client. He was suspended for 6 months retroactive to the date of his interim suspension. Unlike Respondent, Morris did not violate any ethical duty to his client. In this case, the recommended retroactive suspension is not disproportionate.

Respondent does not want to have his reputation sullied by a suspension. He asserts that public censure would be appropriate or, at most, a 6-month retroactive suspension. He does not explain how this would be any less a blot on his reputation than a suspension for two years commencing June 1987.

## CONCLUSION

We adopt the reports of the Committee and the Commission, and the recommendations of the Commission. Accordingly, we retroactively suspend Respondent for a period of 2 years, effective June 1987. We place Respondent on probation for a period of one year from June 1992 under the following terms and conditions:

1. Respondent shall abstain completely from the use of alcohol.

2. Respondent shall submit to body fluid tests, randomly drawn, not to exceed two per month, at the discretion of the MAP Director, on the request of the Director or a person designated by the Director. The body fluids shall be tested for alcohol, and such testing shall be conducted within 8 hours of the Director's or designate's notice to Respondent. Upon request, a split sample will be furnished to Respondent or his designate. The test results shall be furnished to the State Bar. All testing shall be at Respondent's expense.

3. Respondent shall have as a "practice monitor" an attorney who will agree, in writing, to supervise Respondent's law practice and monitor his case load, the quality of services rendered, and his trust account. Respondent's practice monitor shall agree to report to the State Bar any manifestation of relapse, unusual behavior or conduct falling below minimum standards of the profession as set forth in Rule 42, Arizona Rules of the Supreme Court.

4. Respondent shall also be supervised by a "sobriety monitor," with whom he will enter into a mutually agreeable contract for attendance at Alcoholics Anonymous meetings, with a minimum attendance at one meeting per week. The sobriety monitor shall be responsible for reporting any breach of the sobriety contract to the State Bar.

5. Respondent shall keep his books of account, ledgers, trust account, books or files open for inspection by the State Bar of Arizona or its designated probation supervisor. Client files shall remain confidential to the extent provided by the Arizona Rules of Professional Conduct.

6. Respondent shall complete 24 hours of continuing legal education courses each year in areas approved by the Respondent's practice monitor, at least 6 of which shall be in the area of legal ethics.

7. In the event that Respondent fails to comply with any of the foregoing conditions and information thereof is received by the State Bar, bar counsel shall file with the Committee a Notice of Non-Compliance. The Committee then shall conduct a hearing at the earliest receipt of the notice to determine whether a condition of probation has been breached and, if so, to recommend an appropriate sanction.

8. In the event there is an allegation that any of these terms have been breached, the burden of proof shall be upon the State Bar to prove non-compliance by a preponderance of the evidence.

Respondent shall pay to the State Bar of Arizona the sum of $4,664.95, plus costs accrued to this date, plus any additional costs the State Bar may incur during Respondent's probation. The costs shall be paid prior to termination of Respondent's probation.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.