871 P.2d 693

**In the Matter of a Member of the State Bar of Arizona, Charles Millard GILES, Respondent.**

No. SB–93–0013–D.
Disciplinary Commission Nos.
86–1508, 88–0307.

Supreme Court of Arizona,
In Division.

March 31, 1994.

Slutes, Sakrison, Even, Grant & Pelander, P.C. by Tom Slutes, Tucson, for respondent.

Snell & Wilmer by David A. Paige, Tucson, for State Bar of Arizona.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

This is a State Bar disciplinary proceeding. The Hearing Committee recommended that respondent be suspended for 30 days. The Disciplinary Commission recommended that respondent be suspended for 90 days and make restitution to two complainants. Respondent timely appealed. We have jurisdiction pursuant to Ariz.R.Sup.Ct. 46(a).

### FACTUAL AND PROCEDURAL BACKGROUND

This disciplinary proceeding concerns the conduct of respondent, Charles Giles, an attorney since 1964, in two separate matters. Each matter is discussed separately.

### I. Client A

In 1978 and thereafter, respondent represented a collection agency that performed collection services for Client A, a welding company. On behalf of Client A, respondent filed a lawsuit against a hospital to collect a debt of approximately $2,000. The hospital filed an answer and counterclaim, denying the debt and alleging overcharges on the account and property damage by Client A.

On November 1, 1978, the trial court granted respondent's request for a prejudgment provisional remedy conditioned upon the posting of the applicable garnishment bond. The bonding company began charging and Client A thereafter paid an annual garnishment bond fee of $30.

Respondent never posted the bond because, in January 1979, respondent and the hospital's attorney agreed that the hospital would provide respondent with a check for $1,973.52, the amount being claimed by Client A. As agreed, respondent placed the money in the collection agency's trust account pending resolution of the lawsuit. This money was tendered by the hospital in lieu of the court-ordered garnishment; in other words, the agreement eliminated the need to post a garnishment bond. Respondent did not inform Client A of this agreement. Consequently, Client A unnecessarily continued to pay the annual bond premium at least through 1983. On several occasions, respondent led Client A to believe a garnishment bond had actually been posted.

Beginning in November 1982, corporate counsel for Client A began contacting respondent concerning the status of the hospital lawsuit. Among other things, Client A wanted to know whether it should continue to pay the annual bond premium. Respondent failed to answer many, and perhaps all, of corporate counsel's repeated calls and letters. At one point, respondent did tell an officer of Client A that he saw no reason for Client A to continue to pay the bond premium, but he failed to explain why.

In January 1984, respondent informed Client A that the hospital lawsuit could be resolved "for the funds being held under a garnishment." He therefore again failed to explain to Client A that there never was a garnishment. Corporate counsel responded that it could not agree to such a resolution without knowing more about the status of the lawsuit. Respondent failed to respond to Client A's request for information on the lawsuit, but he did repeatedly promise to turn the file over to Client A. Respondent failed to follow through on these promises.

In November 1984, Client A instructed respondent to attempt to settle the litigation with both sides dismissing their claims. Respondent did not settle the lawsuit. In fact, respondent failed to communicate with Client A throughout 1985. Consequently, Client A again asked respondent, repeatedly, to return the file. Respondent did not return the file as requested.

In January 1986, eight years after the lawsuit had been filed, corporate counsel for Client A learned through its own investigation that no bond had ever been posted or approved by the court. Corporate counsel then wrote respondent demanding to know

whether he was holding any funds in the matter. Respondent did not answer the letter.

In September 1986, Client A and the hospital agreed on their own that the case should be dismissed. Despite repeated requests from Client A, respondent failed to communicate with corporate counsel concerning preparation of the stipulation and order to dismiss the litigation. In December 1987, Client A finally discovered that the hospital had provided a check in lieu of garnishment in 1979. In April 1988, respondent finally tendered Client A's share of the money held in the collection agency's account since 1979. Client A did not receive any interest on the money.

Client A filed a complaint with the State Bar. The Hearing Committee and Disciplinary Commission found that respondent's conduct in this matter violated former Rule 29(a), Rules of the Supreme Court, specifically DR 6-101(A)(3), DR 9-102(B)(1), DR 7-101(A)(1) and (3) and Rule 42, Rules of the Supreme Court, specifically ER 1.4 (communication) and ER 1.15(b) (safekeeping property).

## II. Client B

In 1985, respondent represented a collection agency that performed collection services for Client B, a concrete company. On behalf of Client B, respondent filed suit against a construction company to collect a debt of approximately $54,000. The construction company answered the complaint and filed a counterclaim, denying liability and alleging that the work had been performed poorly.

The trial court assigned the case a trial date of November 24, 1986, advising counsel that failure to timely file a joint pretrial statement would result in a dismissal without prejudice. Respondent did not file a pretrial statement. Consequently, the case was dismissed without prejudice on November 7, 1986. Respondent did not inform Client B of these developments despite numerous inquiries from Client B regarding the status of the matter. Client B did not even learn that the case was dismissed until seven months

later when newly retained counsel reviewed the court files and discovered the dismissal.

Respondent offered two excuses for permitting the dismissal. First, he testified he allowed it because he had an agreement with opposing counsel to reinstate the case. In light of later developments in the case, the Committee did not find this explanation credible. Respondent also testified that he allowed the dismissal because he and opposing counsel were near a settlement. Because Client B had made it clear that it did not want to settle the case, the Committee also found this explanation not credible.

On November 6, 1986, one day before the dismissal, Client B asked that respondent immediately return the file in this matter. For ten months, respondent ignored this and numerous other requests from Client B for the file. Respondent did finally return the file, but only after Client B complained to the State Bar and to the State Banking Department.

In March 1991, Client B retained new counsel to collect the debt owed by the construction company. Eventually, of the original $54,000 claim, Client B recovered approximately $15,000. An officer of Client B testified that approximately $20,000 of the Client B claim against the construction company was dismissed by reason of the running of the statute of limitations.

Client B filed a complaint with the State Bar. The Hearing Committee and Disciplinary Commission found that respondent's conduct in this matter violated Rule 42, Rules of the Supreme Court, specifically ER 1.3 (diligence), ER 1.2(a) (scope of representation), 1.4(a) (communication), and 1.16(d) (declining or terminating representation).

### ISSUES

1) Whether the findings of fact and conclusions of law rendered by the Committee and adopted by the Commission are supported by clear and convincing evidence.

2) Whether the Disciplinary Commission's recommendation of a 90 day suspension is appropriate in light of the facts of this case and relevant American Bar Association's Standards for Imposing Lawyer Sanctions.

3) Whether respondent should be required to pay restitution.

## DISCUSSION

### I. Findings of Fact and Conclusions of Law

 Although this court is the ultimate trier of fact and law in disciplinary proceedings, we give great deference to the reports and recommendations of the Committee and Commission. *In re Gaynes,* 168 Ariz. 574, 576, 816 P.2d 231, 233 (1991). Before the court imposes discipline, however, it must be persuaded that the Committee's and Commission's findings and conclusions are supported by clear and convincing evidence. *Matter of Jones,* 169 Ariz. 19, 21, 816 P.2d 916, 918 (1991).

 After reviewing the record, we conclude the findings of misconduct in this case are supported by clear and convincing evidence. There is no doubt that respondent failed to communicate adequately with his clients. Nor is there any doubt that respondent knowingly allowed one of his client's lawsuits to be dismissed without that client's consent. In both cases, respondent failed to act with the diligence and professionalism required of an attorney. Thus, with the exception of the findings related to restitution discussed below, we adopt the findings of fact and conclusions of law rendered by the Committee and adopted by the Commission.

### II. Suspension

 Respondent argues his behavior does not merit a 30 day suspension, as recommended by the Committee, let alone a 90 day suspension, as recommended by the Commission. After careful consideration, we conclude that the Commission's recommendation is reasonable and that we should adopt it.

 The purpose of lawyer discipline is not to punish the lawyer, but to protect the public and deter similar misconduct in the future. *In re Fioramonti,* 176 Ariz 182, 187, 859 P.2d, 1315, 1320 (1993). In imposing the appropriate discipline, we consider the facts of the individual case and the American Bar Association's Standards for Imposing Lawyer Discipline (ABA Standards). *In re Pappas,* 159 Ariz. 516, 526, 768 P.2d 1161, 1171 (1988). We may also consider similar cases. *Id.*

### A. ABA Standards

In fashioning the appropriate sanction, ABA Standard 3.0 suggests we look at (1) the duty violated; (2) the lawyer's mental state; (3) the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating and mitigating factors.

In both of the matters before us, respondent violated a duty of diligence to the affairs of his clients. ABA Standard 4.42(a) suggests suspension is appropriate when a lawyer "knowingly fails to perform services for a client and causes injury or potential injury to a client." In the Client A matter, respondent failed to respond to Client A's requests for information regarding the status of the lawsuit and the annual bond premium. He also refused to turn the file over to Client A despite repeated requests to do so and despite repeated promises that he would do so. On top of all this, respondent failed to inform Client A that he was holding monies in the lawsuit pending resolution of the case.

In the Client B matter, respondent knowingly permitted a lawsuit to be dismissed without his client's consent. He also failed to return a file despite numerous requests from his client that he do so. His communication with Client B was far from acceptable.

In both matters, respondent's conduct caused injury or potential injury to his clients. We therefore agree with the Committee and Commission that suspension is appropriate in this case.

### B. Aggravating and Mitigating Factors

Under ABA Standard 9.22, the Committee and Commission found several aggravating factors applicable. After reviewing the record, we agree with the following aggravating factors found by the Committee and the Commission: a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of conduct, and evidence of a prior disciplinary record. In mitigation, the Committee and Commission found an absence of a dishonest or selfish motive and

delay in the disciplinary proceedings. We also agree that these mitigating factors are present.

Respondent in this proceeding has, in general, cooperated with the State Bar investigation but, unfortunately, respondent has been informally reprimanded before and his misconduct in this case affected more than one client. We also note that the Committee found respondent's testimony not credible. This finding is clearly supported by the record. Respondent's explanations for permitting the dismissal of Client B's lawsuit, for instance, are not credible in light of later developments in the case and the testimony elicited during the proceedings. Candor before the disciplinary tribunal is essential to an effective disciplinary proceeding.

Based on the ABA guidelines and the aggravating and mitigating factors, we therefore agree with the Commission that respondent should be suspended for a period of 90 days. Although there has been some historic reluctance to impose suspensions for periods of less than six months, we find a 90 day suspension appropriate under the facts of this case. In *In re Anderson*, 163 Ariz. 362, 788 P.2d 95 (1990), we also imposed a 90 day suspension.

## III. Restitution

Respondent argues he should not be required to pay restitution because he did not have notice that restitution would be sought as part of his sanction and, alternatively, the evidence does not support a restitution order. We address each of these arguments in turn.

■ Respondent had sufficient notice that restitution might be part of the recommended sanction.[1] Rule 52(a)(7), Rules of the Supreme Court, lists restitution as one of the possible sanctions in disciplinary proceedings. Through discovery, respondent knew the State Bar was alleging his conduct caused injury to his clients. At the Hearing, several witnesses testified about and exhibits showed how Clients A and B were financially harmed by respondent's lack of diligence. In its Statement on Review, the State Bar objected to the Committee's finding that there was no evidence presented on restitution. We fail to see how respondent can now claim lack of notice.

■ Nevertheless, respondent argues that, even if he had notice, restitution was not properly proved, at least with regard to the Client B matter. He argues there is insufficient evidence in the record to justify such a sanction. He also contends he should be entitled to supplement the record to prove his conduct did not harm Client B, and he has submitted additional material to the court without leave to supplement. In response, the State Bar has moved to supplement the record.

We agree that, on the record now properly before the court, it is unclear whether respondent should be ordered to make restitution to Client B. However, we do not consider it appropriate to consider the additional evidence submitted by both parties on this issue. This is not the proper forum for such evidentiary issues. Therefore, we remand to the Commission for the limited purpose of supplementing the record with evidence on the issue of restitution to Client B. If the Commission wishes to use the Committee or a Hearing officer for this purpose, it may do so. The Commission shall then make its recommendation concerning restitution for Client B to this court within 90 days of the date this opinion is filed. Each party will then have 15 days to simultaneously respond, in writing, to the recommendation of the Commission. After considering the recommendation of the Commission and the written submission of both parties, the court will enter the appropriate order regarding restitution, if any, to Client B.

■ The record does, however, support the Commission's recommended restitution to Client A. The record shows Client A unnecessarily paid several annual bond premium fees because respondent failed to communicate with Client A that no bond had

---

1. To prove respondent had notice that restitution might be sought, the State Bar moves to supplement the record on appeal, arguing that it should be permitted to supplement the record because respondent raised the notice issue for the first time on appeal. We conclude it is not necessary to supplement the record to prove notice. We therefore deny the Bar's motion to supplement.

ever been posted. The record also shows Client A did not receive interest on the funds held by respondent. Respondent does not dispute the Commission's calculation of restitution with regard to Client A, so the Commission's recommendation of restitution to Client A in the amount of $2,006.99 is approved. This restitution shall be made within 60 days of the filing of this opinion.

### DISPOSITION

Respondent is hereby suspended from the practice of law for a period of 90 days beginning 60 days from the date that this opinion is filed. Respondent is ordered to make restitution to Client A, as discussed above. We remand to the Commission to make a recommendation on the issue of restitution to Client B. Costs of $2,731.59 in favor of the State Bar are also assessed against respondent. Judgment shall be entered accordingly.

CORCORAN and MARTONE, JJ., concur.