897 P.2d 1337

**In the Matter of a Member of the State Bar of Arizona, Duane Norman VARBEL, Respondent.**

No. SB–93–0070–D.
Disc. Comm. No. 91–1875.

Supreme Court of Arizona,
En Banc.

June 29, 1995.

Herbert & Associates, P.A. by John D. Herbert, Phoenix, for respondent.

Yigael M. Cohen, Phoenix, for State Bar.

## OPINION

ZLAKET, Justice.

A hearing committee has determined that respondent is guilty of multiple ethical violations. The disciplinary commission agrees. Both have recommended disbarment. We have jurisdiction pursuant to Rule 53(e), Ariz.R.Sup.Ct.

Mr. and Mrs. R retained respondent to represent them in a landlord-tenant dispute. The case went to trial in November 1988. It resulted in an $86,500 judgment in favor of respondent's clients and a $2,500 judgment against them on a counterclaim. One month later, the attorney for the opposing parties made a written settlement offer of $18,000 to respondent, who rejected it. Respondent thereafter turned his entire file over to the clients' appellate attorney, who shared an office with him.

In November 1989, the court of appeals reversed the verdict for Mr. and Mrs. R but left intact the judgment on the counterclaim. Respondent subsequently received a demand letter from the adverse parties' appellate attorney, which contained a general reference to the previous settlement offer.[1] He forwarded it to his clients, retaining a copy for their file.

In May 1990, Mrs. R had a telephone conversation with respondent, which she taped at the request of a police officer who was investigating her claim of a complex "conspiracy" involving respondent, the defendants, and possibly opposing counsel in the underlying lawsuit.[2] During this conversation, she asked respondent about settlement offers made before the appellate process began. He replied that there had been only one tentative oral offer in the approximate amount of $10,000. At the close of this discussion, Mrs. R asked if she could pick up the rest of her papers, and respondent agreed.

The clients apparently got the file from their appellate attorney, although it is unclear exactly when or by whom it was obtained. It contained both the written settlement offer and the subsequent demand letter referencing it. Neither respondent nor the appellate attorney retained a copy of the file.

In September 1991, Mrs. R filed a complaint with the state bar, alleging the aforementioned conspiracy. She further claimed that respondent never communicated the $18,000 settlement offer to her or her husband. The bar pursued only the latter allegation.

Respondent denied all charges. He maintained that the offer had been communicated to the clients at a meeting in his office, during which he also explained the appeals process, anticipated costs, and the likelihood of collecting the original judgment. To corroborate his story, he offered an affidavit

---

1. The letter observed that respondent's clients had been "unwilling to entertain the settlement offer made by [the opposing parties] at the beginning of the appellate process."

2. Mrs. R apparently believed that respondent dismissed certain parties from the action as part of this conspiracy. She also thought that respondent failed to raise certain arguments at trial because, for some unexplained reason, he wanted the $86,500 judgment to be overturned on appeal.

signed by his secretary. Mr. and Mrs. R claimed that such a meeting never took place. Mrs. R could not recall whether she ever discussed with respondent any of the other topics he said were covered during the meeting. Her husband remembered that detailed information was provided about the appeals process, transcript costs, a bond that the opposing party would have to provide, and the prospects of collecting on the judgment. When asked where these subjects were discussed, however, he was unable to say.

## I. Failure to Communicate the Offer

■ Mr. and Mrs. R both testified that respondent never told them about the written settlement offer. The hearing committee concluded that their testimony was credible and "supported by the overwhelming evidence in the case." Conversely, respondent and his secretary swore that he did convey the offer, but they were not believed. The committee determined that respondent's taped telephone statements supported the clients' version of the facts and were clearly inconsistent with disclosure of the written settlement offer.

The committee was also influenced by the absence of corroborating evidence. There was no correspondence reflecting transmittal of the offer to the clients (respondent claiming he handed Mrs. R a copy in person); no appointment calendar showing the alleged meeting (respondent explaining that he discarded his old calendars when he relocated his office); no phone records or bills documenting the calls allegedly made to set up the appointment; and no notes in the file about the purported meeting. With respect to the last item, respondent maintained that someone had removed his notes from the file, most likely while it was in the clients' possession.

The committee concluded that respondent failed to communicate the settlement offer to his clients, in violation of ER 1.2 and ER 1.4. The commission agreed. We believe the evidence was sufficient to support this conclusion.

## II. Misrepresentations to the Bar and Committee

Both the committee and the commission found that respondent intentionally lied during these proceedings in an attempt to conceal his failure to communicate the offer. They further determined that he knowingly encouraged at least one member of his secretarial staff to make false statements. Each concluded, therefore, that respondent engaged in dishonest conduct in connection with a disciplinary matter, in violation of ER 8.1 and ER 8.4. Neither the committee nor the commission offered any explanation for such findings other than that respondent and his witnesses were not believable.

■ Although this court is the final arbiter of law and fact in disciplinary cases, *In re Loftus*, 171 Ariz. 672, 674, 832 P.2d 689, 691 (1992), we normally defer to the findings of the committee, especially in matters of witness credibility, *In re Kersting*, 151 Ariz. 171, 172, 726 P.2d 587, 588 (1986). We must, however, be satisfied that they are supported by clear and convincing evidence. Rule 54(c), Ariz.R.Sup.Ct.; *In re Jones*, 169 Ariz. 19, 21, 816 P.2d 916, 918 (1991). We accept the committee's finding that respondent's explanations were unpersuasive. However, lack of credibility is not always the equivalent of intentional dishonesty. Judges and juries often disbelieve witnesses, but that does not necessarily give rise to findings of perjury.[3] Humans are forgetful, make mistakes, and get confused. As one committee member observed in answer to respondent's suggestion that Mr. and Mrs. R were lying, based on inconsistencies in their stories, "[I]t is impossible to categorize people as intentional prevaricators or people that simply

---

**3.** The dissent exhibits some discomfort with our use of the term "perjury." Regardless of what he chooses to call it, however, Justice Corcoran clearly concludes that two people, respondent and his secretary, deliberately lied under oath.

*See* A.R.S. § 13–2702: He also apparently suspects that criminal charges might be appropriate, as evidenced by his suggestion that the Attorney General or a county attorney should look into this matter.

have bad recollections." Hearing on Motion to Reopen, October 19, 1992, at 20. The fact that a witness is not believed does not, standing alone, constitute clear and convincing evidence of intentional fabrication.

■ We believe the record is insufficient to support the conclusion that respondent intentionally lied. The explanations he offered were at least plausible, if not convincing. Moreover, we note that respondent refused to change his story even after members of both the committee and the commission essentially told him it was his only hope of avoiding serious discipline. Finally, respondent made no attempt to destroy or hide from his clients the letter referencing the offer he supposedly knew that he never told them about. He not only mailed it to them but had a copy placed in their file. He made no effort to remove it, even after Mrs. R told him she intended to pick up all her papers. He also left the original written settlement offer in the file.[4] It is therefore understandable that two members of the commission were unwilling to accept the finding that respondent intentionally deceived the committee, even though one of them agreed that he was not credible.

We distinguish *In re Fresquez*, 162 Ariz. 328, 783 P.2d 774 (1989), and *In re Fioramonti*, 176 Ariz. 182, 859 P.2d 1315 (1993), where the evidence was uncontroverted that the attorneys had lied to the committee and commission. In *Fresquez*, the attorney was accused of 1) preparing and having his client sign a back-dated letter recanting the bar complaint and 2) having his secretary sign a false affidavit stating that she had mishandled that complaint. *Fresquez*, 162 Ariz. at 329–31, 783 P.2d at 775–77. He initially denied any involvement with the client's letter, later stated that perhaps someone on his staff had helped prepare it, and finally admitted doing it himself. *Id.* at 330, 783 P.2d at 776. He also admitted that he had drafted the affidavit without consulting his secretary and thereafter requested that she sign it. Finally, he conceded that she had never even seen the bar complaint. *Fresquez* Hearing Comm.Trans., Jan. 30, 1988, at 165–66. In *Fioramonti*, the attorney admitted creating and back-dating file notes and soliciting false affidavits. *Fioramonti*, 176 Ariz. at 185, 859 P.2d at 1318. In contrast, this respondent has never changed his story, has offered explanations for apparent inconsistencies in the evidence,[5] and has not admitted any wrongdoing.

■ We expect and demand candor in disciplinary proceedings, particularly because attorneys are officers of this court. *See id.* at 187–88, 859 P.2d at 1320–21. Lying during such proceedings is one of the most serious ethical violations an attorney can commit and, absent mitigating circumstances, warrants the ultimate sanction of disbarment. *See Fresquez*, 162 Ariz. at 335, 783 P.2d at 781. However, despite (or perhaps because of) its seriousness, we cannot permit such an offense to be established on a lesser showing of proof than other ethical violations.

Respondent's explanations are difficult to accept. After a careful review of the record,

4. The dissent, without any support in the record, attributes to poor memory the fact that respondent made no effort to purge his file of incriminating correspondence before it was turned over to the clients. Interestingly, however, the dissent scoffs at the possibility that respondent's testimony could have been the product of anything other than deliberate fabrication.

5. The dissent specifically notes the absence of telephone records. The transcript of proceedings reflects, however, that the state bar, on whom the burden of clear and convincing proof rested, deliberately made no attempt to obtain and produce such documents. Respondent, on the other hand, apparently made two such attempts; the first, prior to the hearing and with-

out benefit of a subpoena, was rejected by the telephone company because of the age of the records requested. At a subsequent hearing on his motion to reopen the proceedings, both respondent and the committee expressed an interest in examining the phone records, if possible. The committee thereafter issued subpoenas so that respondent could obtain whatever records were available. We have been furnished with what appears to be a portion of those documents, but it is clear that they are by no means complete, or even all that were subpoenaed. Furthermore, the record before us contains absolutely no analysis or testimony regarding these materials, and it is impossible to make any sense of them in their present form.

however, we cannot reach the conclusion that they are total fabrications. In other words, although we are concerned that respondent may have lied to the committee, we are not convinced that he did. Furthermore, we do not wish to deter attorneys from truthfully challenging charges against them for fear that they will not be believed and will then be disbarred for lying. *See In re Shannon*, 179 Ariz. 52, 81–82, 876 P.2d 548, 577–78 (1994) (Zlaket, J., dissenting).

Our decision today is consistent with an opinion issued just last year by a panel of this court that included the present dissenter. In that matter, the committee found the lawyer's multiple explanations not credible "in light of later developments in the case and the testimony elicited during the proceedings." *In re Giles*, 178 Ariz. 146, 150, 871 P.2d 693, 697 (1994). The court determined that the foregoing conclusion was "clearly supported by the record," treated it as an aggravating circumstance, and suspended the attorney for 90 days. *Id.* at 150, 151, 871 P.2d at 697, 698. The difference is that the hearing committee in this case chose not to stop after its statement that respondent was not credible, but instead added, with no additional evidence or explanation, an assertion that he wilfully lied. We find no support in the record for this distinction.

III. Disposition

■ The committee determined that the underlying breach of professional responsibil-

ity was relatively minor under the circumstances, especially because the clients would probably have declined the offer had it been conveyed to them.[6] Thus, it held that this violation alone would not warrant disbarment. The committee found, however, that respondent's misrepresentations were much more serious. It also considered the following aggravating circumstances: 1) dishonest or selfish motive, 2) submission of false statements during the disciplinary process,[7] and 3) respondent's substantial experience in the practice of law.[8] The committee did not consider respondent's disciplinary record as an aggravating factor because his prior offense occurred nearly ten years earlier; however, it found no mitigating circumstances. Pursuant to Standard 6.11 of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991), the committee recommended disbarment. The commission adopted this recommendation.

We do not believe that the allegations of intentional misrepresentation have been proved by clear and convincing evidence. However, in determining an appropriate sanction for the underlying ethical breach, we cannot ignore the committee's unanimous finding that respondent's explanations were not credible. *See Giles*, 178 Ariz. at 150, 871 P.2d at 697. Taking this into account, together with the lack of any mitigating evidence and the strong recommendation of disbarment, we deem it appropriate to suspend respondent from the practice of law. The record reflects he has been on interim sus-

---

6. The dissent suggests that the offer might have led to discussions and eventually to a settlement acceptable to Mr. and Mrs. R. This statement is unsupported by anything in the record and is pure speculation.

7. Because even under our criminal jurisprudence (except in death penalty cases), aggravating circumstances need only be "supported by reasonable evidence," *State v. Turner*, 141 Ariz. 470, 475, 687 P.2d 1225, 1230 (1984) (citing *State v. Meador*, 132 Ariz. 343, 347, 645 P.2d 1257, 1261 (Ct.App.1982)), it is difficult to believe that a higher standard of proof could or should be required in attorney discipline cases. We therefore find no inconsistency in this aggravating circumstance being considered despite

our conclusion that the bar did not prove by *clear and convincing* evidence that respondent deliberately lied.

8. Respondent does not challenge this aggravating circumstance, so we will not address it in any detail. We simply note that the court has previously indicated some difficulty with the use of this factor in aggravation. *See In re Owens*, 182 Ariz. 121, 126–127, 893 P.2d 1284, 1289–90 (April 13, 1995) (finding substantial experience in the practice of law, without prior discipline, to be a *mitigating* circumstance); *In re Arrick*, 180 Ariz. 136, 143, 882 P.2d 943, 950 (1994) (noting that the use of this factor in aggravation may deserve closer examination); *Shannon*, 179 Ariz. at 82, 876 P.2d at 578 (Zlaket, J., dissenting).

pension since March 21, 1994. We hereby suspend him for an additional two years commencing with the date of this opinion. Pursuant to Rule 52(a)(8), Ariz.R.Sup.Ct., respondent is also assessed costs incurred by the bar in the amount of $3,629.62.

FELDMAN, C.J., MOELLER, V.C.J., and MARTONE, J., concur.

CORCORAN, Justice, dissenting:

I respectfully dissent.

### FACTS

Both the hearing committee of the State Bar of Arizona and the disciplinary commission of this court have recommended that this court disbar respondent Duane Norman Varbel. And with good reason.

The hearing committee, the disciplinary commission, and this court all have found that respondent did not communicate the $18,000 written settlement offer to his clients, Mr. and Mrs. R. All conclude that the evidence was clear and convincing. *See* rule 54(c), Rules of the Arizona Supreme Court. The majority of the court parts company with the hearing committee, the disciplinary commission majority, and this dissent as to whether respondent lied to Mr. and Mrs. R, lied to the committee, lied to the commission, and lied to this court when he told all and testified that he had in fact orally communicated the written $18,000 offer to Mr. and Mrs. R.

The committee did not merely find that respondent and his long-time secretary lacked credibility, and therefore respondent should be disbarred. The hearing committee found that

> The respondent attempted, willfully and deliberately, to mislead the State Bar and this committee as to whether he had conveyed the settlement offer to [Mr. and Mrs. R], both through his own testimony and through the testimony and affidavit respondent elicited from [his secretary].... [T]he committee ... concluded

that respondent, during the course of these State Bar proceedings, intentionally, and/or knowingly, made false statements of material fact in order to conceal his failure to communicate that offer [to Mr. and Mrs. R].... [T]he respondent had violated or attempted to violate the Rules of Professional Conduct by the making of false statements of material fact and by knowingly assisting or inducing others to do so, to-wit: his secretarial staff.

. . . .

Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation....

The underlying facts of this disciplinary proceeding are fairly simple. Respondent undertook the representation of Mr. and Mrs. R in a landlord-tenant dispute. The case was very difficult, but respondent secured a favorable jury verdict in November 1988. Judgment was entered in favor of Mr. and Mrs. R for $11,500 in compensatory damages and $75,000 in punitive damages. However, the defendants recovered judgment on a counterclaim against Mr. and Mrs. R in the amount of $2,500.

The following month, the attorney for the defendants made an $18,000 written offer of settlement to respondent. Respondent rejected this offer. The committee, the commission, and this court (unanimously) find by clear and convincing evidence that respondent did not communicate the settlement offer to Mr. and Mrs. R, in violation of Ethical Rules 1.2 and 1.4.

I believe that the disciplinary commission is correct in saying, "it is highly probable that Mr. and Mrs. R would have rejected the offer themselves, had they been aware of it." A settlement of $18,000, with a net recovery of $10,000–$12,000, probably would not have been sufficient for Mr. and Mrs. R to stave off bankruptcy. But, the offer might have brought about discussions leading to a settlement which would have been acceptable to them. Ultimately, Mr. and Mrs. R did file for bankruptcy, and their debts were dis-

charged. If the parties had settled for $18,-000, respondent would have retained one-third, or approximately $6,000.

Because the $18,000 settlement offer was rejected by respondent, the appeal proceeded. Respondent associated an attorney with whom respondent shared office space to handle the appeal. If on appeal the judgment in favor of Mr. and Mrs. R had been affirmed, respondent would have retained approximately $28,000 as his contingent fee. He had agreed to pay the associated counsel $10,000 in the event of a successful defense of the judgment in favor of Mr. and Mrs. R.

Defendants successfully appealed and the court reversed the $86,500 judgment in favor of Mr. and Mrs. R. That left Mr. and Mrs. R still obligated to pay the $2,500 judgment to the defendants on the counterclaim, along with court costs and attorneys' fees. The mandate was issued by the court of appeals in April 1990. Within a few weeks, the attorney for the defendants wrote to respondent proposing a "settlement" whereby Mr. and Mrs. R would pay the defendants the $2,500 judgment, interest, and taxable appellate and trial costs, totalling $8,075.52, and defendants would forego the claim for attorneys' fees in the trial court and in the court of appeals. In the letter, the following sentence appeared in paragraph 2:

> This action is taken despite the fact that your clients [Mr. and Mrs. R] were unwilling to entertain the settlement offer made by my clients at the beginning of the appellate process.

Respondent mailed a copy of this letter to Mr. and Mrs. R. He asked them to review the letter and contact him as to how to proceed in the case.

Mrs. R discussed making a criminal complaint against respondent with an officer of the Payson Police Department. The officer suggested that Mrs. R telephone respondent and discuss the "settlement offer" referred to in the letter because Mrs. R had indicated that no settlement offer had been communicated to them. Mrs. R telephoned respon-dent and tape-recorded the conversation. Both the tape recording and a transcript of it were admitted in evidence in the proceedings before the hearing committee.

After discussing the fact that the supreme court had denied Mr. and Mrs. R's petition for review, and the court of appeals had issued its mandate, Mrs. R indicated that "we don't want to go bankrupt."

Mrs. R then inquired about the reference in paragraph 2 of the defendants' attorney's letter to the fact that Mr. and Mrs. R were "unwilling to entertain the settlement offer ... at the beginning of the appellate process." In response, respondent referred only to a purported offer of $10,000 made orally by the defendants' attorney before he and respondent left the courthouse immediately after the verdict favorable to Mr. and Mrs. R was returned. Mrs. R protested that no such $10,000 offer was mentioned to her. Respondent stated:

> But the only offer they'd [defendants] ever give us was that one.

In his testimony before the commission, respondent stated:

> In the true sense of the word offer, there was only one offer. That would have been the $18,000 [written] offer December 23rd.

Respondent refers to the $10,000 "offer" made at the courthouse as the defendants' attorney "just putting out some feelers." During the recorded phone conversation, respondent did *not* mention the $18,000 written offer of settlement. Mrs. R did not ask about it because she said in her testimony that she did not know about it. Before the taped telephone conversation was over, Mrs. R asked if she could pick up all of her papers. Respondent indicated that she could.

When Mr. and Mrs. R obtained the file from the attorney respondent had associated to handle the appeal, they reviewed its contents. They found the December 23, 1988, letter to respondent from the defendants' attorney offering $18,000 as full settlement of the case.

Mr. and Mrs. R made a complaint to the State Bar that respondent had not informed them of the written offer of settlement in the amount of $18,000.

Thus began a period of dissembling and lying by respondent and his secretary.

The story told by respondent and his secretary was that they received the letter from defendants' attorney dated December 23, 1988. It is a short letter directly making the offer of $18,000 to Mr. and Mrs. R "as full settlement." The letter asked for a response. Respondent did not send the letter to Mr. and Mrs. R. His secretary testified that she phoned Mrs. R at her home in Payson, informed her that respondent had received an offer of settlement, and set up a meeting in Phoenix. The secretary did not state what the offer was; Mrs. R did not ask what the offer was. Mrs. R drove from her home in Payson to respondent's office in Phoenix.

Respondent's secretary testified that while Mrs. R was waiting for her appointment with respondent, she, the secretary, told Mrs. R the amount of the offer. Respondent testified that he then had a conference with Mrs. R, during which he explained various options that were available. Mrs. R rejected the $18,000 offer. Mrs. R testified that she *never* had a meeting with respondent or his secretary at which they discussed the $18,000 offer. The fact is that Mrs. R could have been saved driving from Payson to Phoenix and back by simply relaying the offer over the telephone or by mailing a copy of the letter making the offer to Mr. and Mrs. R. This was not done.

Neither respondent nor his secretary produced any physical evidence, such as records of the telephone company confirming a phone call from respondent's office to Mr. and Mrs. R after the December 23, 1988, $18,000 written offer of settlement was received, other phone messages or records, or appointment books showing a calendared appointment with Mrs. R.

## DISCUSSION

### I

1. The majority must decide what misconduct respondent was involved in and what respondent should be sanctioned for. It appears that the majority agrees with everyone, including this dissent, that there is clear and convincing evidence that respondent did *not* communicate to his clients, Mr. and Mrs. R, an offer to settle their case for $18,000. It also appears that the majority is finding that when respondent testified under oath that he *did* communicate the offer to his clients, there is no clear and convincing evidence that he was "intentionally lying." There is something wrong with the second finding.

I agree with the hearing committee and the disciplinary commission that respondent did not communicate the $18,000 written settlement offer to his clients, and that he lied to and attempted to mislead the State Bar into believing that he had communicated the offer to his clients. The record contains clear and convincing evidence supporting these conclusions. In deciding whether there is clear and convincing evidence under rule 54(c), Rules of the Arizona Supreme Court, we must find that

[t]he State Bar has met its burden if it shows that it is "highly probable" that the allegations in the complaint are true.

*In re Wolfram,* 174 Ariz. 49, 52, 847 P.2d 94, 97 (1993). I have found no discussion of what "clear and convincing" is in disciplinary cases. However, our court of appeals has discussed this standard of proof in a criminal case, where the standard of proof for the insanity defense is "clear and convincing" evidence. That court said

The clear and convincing standard is reserved for cases where substantial interests at stake require an extra measure of confidence [above a preponderance of the evidence] by the fact finders in the correctness of their judgment, though not to such degree as is required to convict of crime [beyond a reasonable doubt].

*State v. Renforth,* 155 Ariz. 385, 387, 746 P.2d 1315, 1317 (App.1987). I conclude that the State Bar has met the burden as required by rule 54(c).

2. The majority notes that "respondent refused to change his story." This is true.

Respondent has *consistently* lied throughout these proceedings. I do not think consistently lying is a virtue.

The majority also notes that "respondent made no attempt to destroy or hide from his clients the letter referencing the offer he supposedly knew that he never told them about." This reference to "supposedly" is disturbing: the majority agrees with the hearing committee, the disciplinary commission, and this dissent, that there is clear and convincing evidence that *respondent did not communicate the settlement offer to his clients.*

3. The majority makes the point that respondent "not only mailed it [the letter referencing the offer] to them [Mr. and Mrs. R] but had a copy placed in their file. He made no effort to remove it, even after Mrs. R told him she intended to pick up all her papers. He also left the original written settlement offer in the file." Some time had passed between the receipt of the settlement offer and this unscheduled telephone call from Mrs. R. Respondent did not know what Mrs. R was looking for. The old adage is true that

> he who has not a good memory should never take upon him the trait of lying.

Michel Eyquem de Montaigne, *Of Liars, in* 1 *Essays,* ch. 9 (1580–1595).

### II

The majority attempts to foist off on this dissent a conclusion that respondent and his secretary committed the crime of perjury. *See* footnote 3 of the majority opinion. This dissent does not confuse the civil preponderance of evidence standard (which the majority apparently finds is satisfied regarding respondent's lies), the civil clear and convincing evidence standard (which the majority finds was *not* satisfied and this dissent finds *is* satisfied regarding the evidence of respondent's lies), and the criminal standard of beyond a reasonable doubt. This dissent does not confuse this case, which deals with non-criminal lawyer misconduct, with a crimi-

nal charge against respondent for perjury. *See State v. Renforth,* 155 Ariz. at 386–87, 746 P.2d at 1316–17. A perjury charge is within the jurisdiction of the Attorney General or a county attorney—and this is a matter they should earnestly review.

In an appropriate case, I have no "discomfort" with the majority opinion using the word "perjury" (as is stated in n. 3 of the majority opinion). But, "perjury" is not the issue in *this* case.

### III

*In re Fresquez* is a case in which we did the right thing—we disbarred that attorney. 162 Ariz. 328, 783 P.2d 774 (1989). *In re Fioramonti,* 176 Ariz. 182, 859 P.2d 1315 (1993), is a case in which a division of this court did the wrong thing—we suspended rather than disbarred that attorney. *See Fioramonti,* 176 Ariz. at 189, 859 P.2d at 1322 (Corcoran, J., dissenting). Unfortunately, we are making the same mistake in this case that we made in *Fioramonti.* This court should disbar respondent.