908 P.2d 472

**In the Matter of a Member of the State Bar of Arizona, David W. CURTIS, Jr., Respondent.**

No. SB–94–0086–D.

Supreme Court of Arizona,
En Banc.

Dec. 8, 1995.

David W. Curtis, Jr., Phoenix, pro se.

Bradford S. Mead, Jackson, WY, for State Bar of Arizona.

## OPINION

FELDMAN, Chief Justice.

David Curtis, Jr. ("Respondent") appeals from the recommendation of the Arizona Supreme Court Disciplinary Commission ("Commission") that he be suspended from the practice of law, be placed on probation thereafter, and pay restitution.

The Commission found that during the course of representing a client in a civil matter, Respondent lacked competence, lacked diligence, failed to maintain proper client communication, and failed to adequately protect his client's interests upon termination of the representation. Specifically, the Commission found that Respondent violated Ethical Rule ("ER") 1.1 (competence), ER 1.4 (communication), and ER 1.16(d) (protection of client interests). Rules of Professional Conduct, Rule 42, Ariz.R.Sup.Ct.

Respondent argues that although imprudent, most of the conduct the Commission found improper did not violate any ethical rule. Respondent additionally asserts that any violation that may have occurred did not harm the client and does not warrant suspension.

We have jurisdiction under Ariz.R.Sup.Ct. 53(e).

## PROCEDURAL HISTORY

The State Bar filed a complaint against Respondent in January 1993. A hearing was conducted on November 13, 1993, at which Respondent was represented by counsel. At that hearing, both Respondent and his wife, who had previously served as Respondent's secretary, testified as to circumstances and events relevant to the complaint. The Hearing Officer recommended a six-month suspension, probation, and restitution that encompassed Respondent's retainer ($375) as well as damages ($3,000) the client allegedly suffered as a result of Respondent's conduct. Pursuant to Rule 53(c)(5), Respondent filed his objection to the Hearing Officer's findings and recommendation. The Commission, by a five-to-four vote, generally adopted the Hearing Officer's findings of fact and conclusions of law. However, by the same vote, the Commission rejected the Hearing Officer's recommended sanctions, recommending instead a three-month suspension, probation, and $375 in restitution. The four dissenters believed a shorter but unspecified suspension was appropriate. Disciplinary Commission Report, November 2, 1994. Respondent appealed pursuant to Rule 53(e).

With this procedural background, we turn to the facts established in the record.

## FACTS

### A. The civil matter

In June 1988, Arizona Pool Builders ("Arizona Pool") contracted with Client to build a swimming pool at his Apache Junction residence. Client arranged financing through a bank, which held the funds in escrow and paid them to Arizona Pool as construction progressed. The construction met with a multitude of problems, some details of which are relevant for background purposes.

It happened that Client's back yard, where the pool was to be installed, was essentially a landfill and was not structurally capable of supporting a pool without extensive excavation and backfilling. Apache Junction officials discovered the landfill when they arrived to extinguish an underground fire touched off by an Arizona Pool welder. The officials refused to permit construction to proceed until the necessary corrective ground work was accomplished.

Arizona Pool, however, soon went bankrupt and stopped working on the pool. Although Arizona Pool had been paid only for

work done, and most of the funds still remained in escrow, Client had to expend funds beyond those originally contemplated to remove the landfill and backfill his property. Client ultimately found another contractor to complete the pool. Unfortunately, most of the work done by Arizona Pool had to be "undone" to accomplish the excavation work and then "redone" by the new contractor. The new contractor was paid primarily from the remaining escrow funds, with the balance of its charges paid directly by Client. The exact allocation of the amounts paid by Client between the unexpected groundwork and the duplication of Arizona Pool's original work is not established in the record.

Client believed that all amounts expended in excess of that originally contracted for with Arizona Pool were attributable to Arizona Pool's negligence. Accordingly, Client contacted the Registrar of Contractors to recover what he believed Arizona Pool owed him. The Registrar informed Client that no action could be taken unless and until the bankruptcy court lifted its stay in Arizona Pool's bankruptcy case. Client then retained counsel to get the stay lifted. The attorney originally retained by Client found that he had a conflict of interest and withdrew. Client then retained Respondent. The scope of this representation is now at issue.

1. The Contractor's Recovery Fund is a statutory scheme that allows residential property owners to recover actual damages suffered as a direct result of a contractor's violation of Title 32, chapter 11 of Arizona Revised Statutes or regulations promulgated thereunder. A.R.S. § 32–1132(A). An award from the Fund is limited to the lesser of $15,000 or that amount necessary to complete or repair a residential structure or appurtenance within residential property lines. *Id.*

 Before a complainant can recover from the Fund, the complainant must have a judgment against the contractor, and must show unsuccessful attempts to collect against the contractor's bond and that the contractor has no property or other assets available to satisfy the judgment. A.R.S. § 32–1136(D).

2. The Registrar's letter stated that:
 The above referenced contractor has filed for bankruptcy under Federal Statutes. Upon filing this action with the Bankruptcy Court, an automatic stay is imposed precluding this office from taking further action on your complaint. For this reason, your complaint is being closed.

## B. The claimed scope of representation

Respondent's position is that he was initially retained by Client to look into the status of Arizona Pool's bankruptcy matter. Respondent maintains that he did just that, and in the course of doing so expended the $375 retainer. After informing Client that it was useless to proceed against Arizona Pool, Client terminated the representation. Client contends that he retained Respondent to get the stay lifted so that he could make a claim against the Contractor's Recovery Fund[1] ("Fund") and that he never asked Respondent to try to reach Arizona Pool's assets, including its contractor's license bond. Client further alleges that he never terminated the representation, that he believed Respondent was still working on the matter, and that Respondent failed to pursue the requested representation. As a result, Client alleges his claim against the Fund was barred by the statute of limitations.

## C. What the record shows

In June or July 1989, after Client's original attorney withdrew, Client telephoned Respondent and discussed his claim against Arizona Pool. Client then sent Respondent copies of documents, including a letter from the Registrar,[2] a letter from Client's first attorney,[3] the bankruptcy notification in Arizona

 If you wish to pursue this matter further, you must obtain relief from this stay through the Bankruptcy Court to allow this office to take further action.
 If you are the owner/occupant of residential property and your cause of action is within the two year statute of limitations, you may be eligible to file a claim against the Contractors' Recovery Fund. [ ]
 Persons who do not fall within the owner/occupant requirements may be eligible to recover money from the contractor's bond. [ ]

3. The attorney's letter stated:
 The court records were reviewed and discovered that the attorney for Arizona Pool Builders is an attorney out of our Mesa office. Because of this conflict I, unfortunately, cannot represent you any further in your case. Enclosed is a check for $400.00, a copy of the bankruptcy notice for Arizona Pool Builders, and your documentation. Also enclosed is a proof of claim form which you should fill out and file with the bankruptcy court.

Pool's case, and a bankruptcy proof of claim form.

The Registrar's letter clearly indicated that Arizona Pool was in bankruptcy and that the Registrar could take no action until the stay was lifted. It also informed Client that he might qualify to recover from the Fund if he met certain conditions spelled out in the letter, one of which was filing a claim against the Fund before the two-year statute of limitations ran.

Respondent claims he made some telephone calls and determined that Arizona Pool was actually in bankruptcy, had no assets, and claims against its contractor's bond exceeded the bond's indemnity limit. Respondent wrote Client on August 11, 1989 informing him that:

> According to your documents, [Arizona Pool] has filed bankruptcy. The form indicates there are no assets. There is no point in filing a proof of claim if there are no assets. There is nothing to be gained by paying out legal fees where there is no chance of recovery. Enclosed are your documents.

Whether Respondent actually enclosed documents is disputed.

Upon receiving Respondent's letter, Client telephoned and told Respondent that he did not want to go after Arizona Pool or its license bond but through the Registrar of Contractors. Respondent told Client to send him $375 for the time he had already spent, along with documentation to show the basis of his claim.

On September 1, 1989, Respondent received a letter[4] from Client confirming the prior telephone conversation and explaining that his goal was to recover from the Registrar of Contractors. It is true that Client never specifically mentioned the Fund by name, but based on the cumulative correspondence and his own testimony, Respondent must have known that this is exactly what Client referred to when he directed Respondent to "get my money back from the [Registrar] of Contractors."[5] Enclosed with this letter was a check for $375, a handwritten list of expenses without explanation, and copies of the same documents Client previously sent to Respondent.

What took place between September 1, 1989 and May 23, 1990 is hotly contested. Respondent claims he went to the Bankruptcy Court in person to check the records, confirmed the bankruptcy status of Arizona Pool, again informed Client that Arizona Pool was bankrupt with no assets, that Client never gave him the information he needed to proceed against the Fund, that Client never provided him with suitable information to establish the basis of his claim, that he telephoned Client around October 1, 1989 to give him this information, and that Client terminated the representation, stating that he would handle the matter himself. Client asserts that he made repeated attempts to contact Respondent by telephone to check on his case, that Respondent refused to return most of the telephone calls, and that he never discharged Respondent.

On May 23, 1990, Client sent Respondent a certified letter that read as follows:

> I have tried repeatedly to get in touch with you regarding my paperwork on Arizona Pool and the registrar of contractors. Since you don't have the courtesy to return my calls, I think its time you just returned my money and papers and I will find a lawyer to handle it before my two year statute runs out. I am asking for all my money because you did not even read the letter. To start with, if you had read the letter you would have gone after the recovery fund and not the company's asset; of which there were none. I called once and talked [to you] but at the time you couldn't find the paper work so I read it to you off my copy. It's too bad you are so busy you

4. The letter stated:
 Enclosed is my check for [$375]. I talked to you over the phone about a week ago. You said you needed a list of the bills. We are filing against Arizona Pool *to lift stay* so I can get my money back *from the register [sic] of Contractors not the pool co.*

> Also enclosed is a copy of the letter [from] the Registrar of Cont., a copy of the bankruptcy papers, and a copy of the letter from the first lawyer.
>
> (Emphasis added).

5. *See* Client's letter, *ante* note 4.

can't help the little man. Please return everything and I will see what can be done. I hope your delay and neglect does not cause me any trouble and that there is money left in the recovery fund.

Respondent claims he responded to this letter and returned the documents, but not the $375 because he earned the fee. Respondent could not, however, produce a copy of the responsive letter. Client claims he received no such letter and that he attempted to reach Respondent by telephone to no avail.

Although he had all the original documents in his possession and was aware of the statute of limitations, Client did not hire another attorney to pursue the matter against Arizona Pool. Instead he filed a bar complaint against Respondent on March 6, 1991. According to the Hearing Officer's conclusions of law, the statute of limitations ran on Client's claim the month before, two years after Arizona Pool filed bankruptcy and ceased operations.[6]

### DISCUSSION

#### A. Standard of review

 In disciplinary proceedings, this court acts as an independent trier of fact and law in the exercise of its supervisory responsibility over the State Bar. *In re Wolfram*, 174 Ariz. 49, 53, 847 P.2d 94, 98 (1993). In doing so, we give deference and serious consideration to the reports of the Hearing Officer and the Commission. *Id.* The State Bar bears the burden of persuading this court by clear and convincing evidence that the respondent committed the violations charged. *Id.* The State Bar has met its burden if it shows that it is highly probable that the allegations in the complaint are true. *Id.*

#### B. Respondent's competence—ER 1.1 [7]

The Hearing Officer found, and the Commission agreed, that Respondent violated ER 1.1 when he did not do what he was retained to do: get the bankruptcy stay lifted so that

Client could file a claim against the Fund. We believe the evidence clearly supports this finding and agree. The Commission found Respondent's contention that Client never volunteered the necessary information thoroughly unconvincing, as do we.

As early as August 1989, Respondent was provided with ample documentation indicating that one possible avenue of recovery was through the Fund. Client's September 1, 1989 letter made it clear that this is the route Client wanted Respondent to take. Respondent did not attempt to determine whether Client's claim met the qualifications for recovering from the Fund. Respondent simply failed to ask questions and investigate. Respondent claims that he asked Client to provide the evidence and basis for his claim. Frankly, we do not know what more evidence and basis would be needed for Respondent to commence Client's case by filing appropriate papers in bankruptcy court to lift the stay, and we doubt a layperson could be expected to know. If Respondent was not competent to handle the claim he had the duty to become competent or not take the case. ER 1.1. Respondent was obligated to investigate the elements of the claim, determine what evidence was needed to support it, and request that information with some specificity from Client. *Id.* He did none of this.

 Neither failure to achieve a successful result nor mere negligence in the handling of a case will necessarily constitute an ER 1.1 violation. We recognize the important distinction between conduct by an attorney that is simply negligent and conduct that rises to the level of an ethical violation. Clearly, the Bar must be vigilant in guarding the rights of clients, "but care should be taken to avoid the use of disciplinary action . . . as a substitute for what is essentially a malpractice action." *See In re Myers*, 164 Ariz. 558, 561 n. 3, 795 P.2d 201, 204 n. 3 (1990) (citations and internal quotations omitted); *see also In re Mulhall*, 159 Ariz. 528,

---

6. There is some indication that the statute of limitations ran on April 11, 1991. We assume, without deciding, that the Hearing Officer's conclusion of law is correct.

7. Ethical Rule 1.1 provides that:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

531, 768 P.2d 1173, 1176 (1989) (noting that negligently allowing a statute of limitations to run does not constitute an ethical violation). Thus, although not every negligent act violates an ethical rule, neglect in investigating the facts and law necessary to present a client's claim crosses the fine line between simple neglect and conduct warranting discipline.[8]

We conclude that Respondent's actions or inactions went beyond mere lack of success or an act falling below the applicable standard of care. Respondent could not provide competent representation because he failed to have, attempt to obtain, or apply the "legal knowledge, skill, *thoroughness* and *preparation* reasonably necessary" for his representation of Client in this matter. ER 1.1 (emphasis added). Respondent may not have known what to do or how to do it, but for whatever reason he did not attempt a thorough review of the matter and did not prepare or do anything beyond a cursory check of the bankruptcy file. Respondent ultimately did no more than tell Client what he knew before hiring Respondent. We conclude that Respondent violated ER 1.1.

### C. Respondent's communications with Client—ER 1.4 [9]

The Hearing Officer and the Commission found that Respondent violated ER 1.4 by failing to keep Client reasonably informed about the status of the matter, failing to respond promptly to Client's reasonable requests for information, and failing to explain the matter to the extent necessary to permit Client to make informed decisions regarding his representation. Again, we agree.

8. We have previously noted that a finding of ineffective assistance of counsel in a Criminal Rule 32 proceeding is *not* conclusive of an ethical violation, and that conversely, a denial of post-conviction relief based on ineffective assistance of counsel will not always preclude a finding of an ethical violation. *See Wolfram*, 174 Ariz. at 53, 847 P.2d at 98. The logic underlying this principle is equally applicable here.

9. Ethical Rule 1.4 provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

At least by August 31, 1989, when Client sent the retainer and documentation with his letter directing Respondent to pursue recovery through the Fund, Respondent was or should have been aware of the nature and scope of his representation. Yet, Respondent failed to explain to Client what further information or steps were necessary to pursue the claim against the Fund so that *Client* could either provide the information or make an informed decision on whether to continue with the claim. Furthermore, Respondent refused to return many of Client's telephone calls because he believed he no longer represented Client. It should have been abundantly clear to him, by the frequency of Client's calls, that Client might not consider the representation terminated. It was therefore incumbent on Respondent to clarify the matter.

Accordingly, we find the evidence clearly supports a finding that at least until May 23, 1990, Respondent had an attorney-client relationship with Client and repeatedly failed to comply with reasonable requests for information. Thus, Respondent violated ER 1.4.

### D. Respondent's protection of Client's interests—ER 1.16(d) [10]

The Hearing Officer and the Commission found that Respondent violated ER 1.16(d) by failing to take reasonable steps upon termination to protect Client's interests, such as surrendering papers and property to which Client was entitled or refunding any unearned fee. The Commission found that Respondent's "failure to return his client's documents and refund any unearned fee, in short,

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the *client to make informed decisions* regarding the representation.

10. Ethical Rule 1.16(d) provides that:
Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

to protect his client's interests after receipt of the May 1990 letter, violated his duty to properly withdraw from representation." Implicit in this finding is that the May 1990 letter served to terminate the attorney-client relationship, that Client did not already have the documents, that it was apparent there was an unearned fee to be returned, and that Respondent's failure to return such items impaired Client's claim against the Fund.

Client's May 1990 letter supports the Commission's implicit finding that representation was terminated by that letter. The Commission also found that Respondent did not earn any of the $375 retainer because none of his activities were directed toward Client's goals and because Respondent produced no information not already possessed by Client. We find the record clearly supports the Commission's finding on this issue as well. The question that remains is whether Respondent failed to take reasonable steps to protect Client's claim against the Fund when his representation terminated on May 23, 1990.

The text of ER 1.16(d) does not require the lawyer to return a fee paid to perform a particular service when the lawyer honestly but erroneously believes he has performed that service. It is only in hindsight that the Hearing Officer and Commission have determined that the fee was unearned. No evidence was produced to show that Respondent kept the fee in bad faith or with knowledge that it had not been earned. A lawyer, like anyone else, can hold an erroneous belief about his fee without being said to have violated ER 1.16(d) by failing to return the fee.

■ Next, the Commission found that Respondent failed to return Client's documents after being terminated. The Commission deferred to the Hearing Officer's finding on this matter based on the credibility of the testimony offered. Because ample testimony was produced on this issue, we accept the Hearing Officer's finding. We disagree, however, with the Commission's application of ER 1.16(d) to this finding.

Even though Respondent did not return the documents, it does not necessarily follow that he violated ER 1.16(d). The steps listed in the rule are merely illustrative, examples of things that *may* need to be done to protect a client's interests. If a client's interests are adequately protected even though the attorney does not take a particular step, there may not be a violation. *See* RESTATEMENT (THIRD) LAW GOVERNING LAWYERS, Tent.Draft No. 5 § 45(1) (Mar. 16, 1992) cmt. b.[11] It is uncontroverted that Client at all times had the originals of all his documents. Because Client had his originals, Respondent's failure to return the copies was not a failure to protect Client's interests.

Client was also specifically aware of the statute of limitations when he terminated the representation in the May 1990 letter. With his original documents in hand, Client was free to retain another lawyer if he so wished and such was his stated intention, some nine months before the statute of limitations ran. Respondent's failure to return copies of papers Client already had was no doubt aggravating, but it did not prevent Client from acting to protect his interest. On this record, we are not persuaded by clear and convincing evidence that Respondent's failure to return copies of documents violated ER 1.16(d).

### SANCTION

■ In determining the appropriate discipline, we are guided by the American Bar

---

11. The RESTATEMENT (THIRD) LAW GOVERNING LAWYERS, Tent.Draft No. 5 § 45(1) (Mar. 16, 1992) is analogous to ER 1.16(d) and provides that:

Upon termination of a representation, a lawyer shall take reasonable steps to protect a client's interests, such as giving notice to the client of the termination, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee the lawyer has not earned.

Comment b, *Protecting the client's interests when representation ends* notes that:

Withdrawing and discharged lawyers must therefore take reasonably appropriate and practicable measures to protect clients when representation terminates. *What efforts are appropriate and practicable depends on the circumstances....* The lawyer must make the client's property and papers available to the client.... Failure to take such steps *may* give rise to disciplinary sanctions and malpractice liability.

*Id.* (emphasis added).

Association's *Standards for Imposing Lawyer Sanctions* (1986) ("ABA *Standards*"). *Wolfram,* 174 Ariz. at 57, 847 P.2d at 102. The purpose of professional discipline is to protect the public, the administration of justice, and the integrity of the legal system, not to punish. *Id.* In reaching our decision, we consider (1) the duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating factors. *Id.*; Standard 3.0, ABA *Standards,* at 25.

### A. The duties violated

We agree with the Hearing Officer and the Commission and have concluded that Respondent violated ER 1.1 and ER 1.4 as discussed. We note and consider that these violations occurred in the course of representation in a civil matter in which the validity of Client's claim and the amount at stake, assuming the claim was valid, were never established.

### B. Respondent's mental state

█ The record indicates that Respondent failed to adequately investigate Client's claim, failed to properly communicate with Client, and failed to adequately explain the matter to Client. With respect to ER 1.1, we find that although Respondent had no experience in filing claims against the Fund, his extensive general experience and work defending contractors in particular make it unlikely that he misunderstood the legal principles involved in Client's case. Rather, we find Respondent failed to acquire the specific legal knowledge and factual basis necessary to properly represent Client. With respect to ER 1.4, Respondent's failure to answer correspondence, refusal to return telephone calls, and failure to explain the matter demonstrates that Respondent knowingly failed to properly communicate with Client.

### C. Actual or potential injury

█ Because the State Bar did not meet its burden of proving what, if any, damages Client suffered as a result of Arizona Pool's work, the Commission found no monetary injury to Client. The Commission did, however, conclude that Client suffered injury by way of the loss of opportunity to have his claim heard. The record does not support the conclusion that Respondent caused this injury.

The Commission found that representation terminated by way of Client's May 1990 letter to Respondent. As noted above, at that point Client knew he still had several months to pursue his claim and had the original documents with which to do so. Thus, at no time after May 23, 1990 did Respondent impair Client's ability to proceed on his own or with different counsel before the statute ran. On this record, Client's choice not do so cannot be attributed to Respondent. Accordingly, the record fails to demonstrate that Respondent's misconduct caused either injury or potential injury.

### D. Aggravating and mitigating circumstances

█ In mitigation, the Commission found no dishonest or selfish motive and that Respondent's prior reprimand for an unrelated and totally dissimilar matter was remote in time. We find the record supports these mitigating factors.

In aggravation, the Commission found that Respondent submitted false statements during the disciplinary process, that his prior informal reprimand for violation of a court order caused unnecessary harm to a client, that Respondent was indifferent to making restitution, that Respondent refused to acknowledge the wrongful nature of his conduct, that he displayed hostility toward the State Bar, and that he questioned the Hearing Officer's impartiality. We address each of these six findings.

█ First, there is no evidence to support a finding that Respondent submitted false statements during the disciplinary process. We were confronted with an analogous situation in *In re Varbel,* 182 Ariz. 451, 897 P.2d 1337 (1995). In *Varbel,* the hearing committee concluded that the testimony of respondent and his secretary was not credible. The committee was influenced by the lack of corroborating evidence to support respondent's assertions. *See id.* at 453, 897

P.2d at 1339. Based on this lack of credibility and corroboration, the committee and the commission found that the respondent lied in an attempt to conceal his failure to communicate a settlement offer. *Id.*

Here, the Hearing Officer found the testimony of Respondent and his wife that they answered Client's May 1990 letter and returned Client's documents was not credible. Given Respondent's failure to produce a copy of the transmittal letter, as in *Varbel,* we accept the finding that Respondent's testimony was unpersuasive. We reject, however, the conclusion that the lack of credibility is equivalent to intentional dishonesty. Lack of credibility, without more, does not constitute intentional fabrication. *Id.* at 454, 897 P.2d at 1340.

■ Second, we reject Respondent's prior informal reprimand as an aggravating circumstance. The Hearing Officer's conclusions of law state only that Respondent had a "[p]rior disciplinary offense (order of reprimand entered on March 5, 1985 for violation of a legitimate court order, causing unnecessary damage to the complainant)." The Hearing Officer did not elaborate further, and the only other information in the record is Respondent's explanation, provided during a telephonic conference after the initial disciplinary hearing.

Respondent explained that the prior reprimand resulted when he was unable to intercept a process server from serving a notice of wage assignment upon a person at his place of employment after the court entered an order to withhold that assignment. Respondent further explained that, at the time, the law provided for two methods of service, one being automatic if the person was more than three months behind on payments, and the other being through an order to show cause. Respondent explained that he instructed the process server to accomplish service under authority of the automatic provision before the court, at a show cause hearing, entered an order to withhold the assignment. The Hearing Officer did not provide any specific findings of fact on this issue, and the facts we have are both remote and too unrelated to the conduct at issue to serve as an aggravating circumstance.

■ Third, we reject the finding that Respondent was indifferent to restitution as an aggravating circumstance. The record utterly fails to explain what the State Bar means by indifferent or why it should be an aggravating factor. Simply because Respondent did not believe he owed Client money and defended himself vigorously does not mean he was indifferent to restitution.

■ Fourth, we agree with the finding that Respondent refused to acknowledge the wrongful nature of his conduct. Respondent insisted throughout the proceedings that Client, rather than Respondent, was responsible for knowing what information Respondent needed. Respondent failed to see anything wrong with not returning telephone calls, triple-verifying the bankruptcy status, and failing to clarify the status of representation when Client obviously thought Respondent was still working on the matter prior to May 1990.

■ Fifth, we reject as an aggravating factor the Commission's finding of Respondent's hostility toward the State Bar. The record clearly shows that Respondent mounted a vigorous and sometimes acrimonious defense. Respondent's counsel conducted a rather scathing cross-examination of Client, and Respondent himself openly contended Client was a liar. The mounting of an honest but stalwart defense in an adversarial proceeding such as this should not come back to haunt respondents. The Hearing Officer listed in her Findings of Fact, Conclusions of Law and Recommendations as an aggravating factor Respondent's "attacks upon the character, integrity and motives of ... bar counsel." Although this is a serious matter, nothing in that report is referenced to support this finding, and an independent review of the record fails to reveal any such attack. Indeed, the only thing we find remotely related to this charge is a single sentence in one of bar counsel's pleadings, alleging that during a telephone conference following the disciplinary hearing "Respondent broadened his attack and took the position that Bar Counsel had secretly withheld documents in a effort to subvert the process." The substance of this conversation is not part of the

record, and counsel's passing reference is not sufficient to support the aggravating factor.

■ Finally, we reject as an aggravating factor the Commission's finding that Respondent "suggested that the Hearing Officer was not impartial...." Again, the record fails to support the finding. A review of the hearing transcript and Respondent's filings in this matter indicates his strong disagreement with the Hearing Officer's findings of fact and conclusions of law. Indeed, Respondent openly questions how some of the findings can be reached and reconciled with each other based on the evidence in the record. These are questions of accuracy, not personal attacks and suggestions of partiality. Thus, they do not rise to the level of an aggravating circumstance.

### E. The appropriate sanction

Although the Hearing Officer and the Commission both agreed that suspension was appropriate, the Hearing Officer recommended a six-month suspension, while five members of the Commission recommended a three-month suspension, with a four-person minority indicating it believed a lesser period was appropriate. The ABA *Standards* provide guidance in determining when suspension is appropriate.

■ With respect to violation of ER 1.1, "[s]uspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer *knows* he or she is not competent, and causes injury or potential injury to a client." Standard 4.52, ABA *Standards*, at 34 (emphasis added). We agree with the Commission's finding that Respondent did not knowingly engage in an area in which he was not competent but, rather, failed to act competently because he failed to take steps to acquire the legal and factual knowledge necessary for proper representation.

With respect to violation of ER 1.4, "[s]uspension is generally appropriate when a lawyer knowingly fails to perform services for a client and *causes* injury or potential injury to a client." Standard 4.42(a), ABA *Standards*, at 33 (emphasis added). There is no causal connection established between Respondent's ethical violations, including his knowing failure to communicate, and any significant harm suffered by Client. Because there is neither injury nor potential injury attributable to Respondent as a result of his misconduct, suspension is not an appropriate sanction.

### F. Sanction imposed

■ The ABA *Standards* recommend admonition when a lawyer "engages in an isolated instance of negligence in determining whether he or she is competent to handle a legal matter, and causes little or no actual or potential injury to a client." Standard 4.54, ABA *Standards*, at 11. Similarly, when a lawyer "is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client", Standard 4.44, ABA *Standards*, at 11, recommends admonition. Even though we find Respondent's failure to communicate was knowing, the presence of the two mitigating factors and the absence of any aggravating factors for this violation make Standard 4.44 the most appropriate to apply to his violation of ER 1.4.

Because Arizona's disciplinary rules do not provide for admonition, Respondent is hereby censured and condemned for conduct unworthy of and in violation of his duties and obligations as a lawyer. We also agree that Respondent could greatly benefit from law office management counseling. Therefore, we uphold terms 2, 3, 4, 6, and 7 of the Commission's imposed probation. Because the fee was unearned, Respondent is also ordered to make restitution to Client in the amount of $375 plus interest at the legal rate accruing since May 23, 1990, plus the costs of the disciplinary proceedings.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.