737 S.E.2d 55

**LAWYER DISCIPLINARY BOARD, Petitioner**

v.

**D. Michael BURKE, Respondent.**

**No. 11–0813.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Nov. 9, 2012.

Jessica H. Donahue Rhodes, Esq., Office of Disciplinary Counsel, Charleston, WV, for Petitioner.

Allan N. Karlin, Esq., Allan N. Karlin & Associates, Morgantown, WV, for Respondent.

PER CURIAM:

This lawyer disciplinary proceeding was brought against D. Michael Burke ("Mr. Burke") by the Lawyer Disciplinary Board ("the Board"). The Board found, upon an evidentiary hearing conducted by the Hearing Panel Subcommittee ("HPS") on October 10, 2011, that Mr. Burke had violated the West Virginia Rules of Professional Conduct.[1] Upon finding a violation, the HPS proposed in its March 21, 2012, report that Mr. Burke be admonished for his conduct, that he satisfy any obligations imposed on him in the pending adversary proceeding filed in bankruptcy court, and that he be ordered to pay the costs of the proceedings before the HPS pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of the Board and Mr. Burke, we find that Mr. Burke has committed ethics violations, and we adopt the sanctions against Mr. Burke as recommended by the HPS.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In the case *sub judice*, neither the Board nor Mr. Burke contest the factual findings of the HPS. The respondent, Mr. Burke, was admitted to the West Virginia State Bar on June 26, 1979. He is a practicing attorney in Berkeley County, West Virginia, with the firm Burke, Shultz, Harman & Jenkinson.

On February 5, 2004, Mr. Burke was hired by Barbara Ann Miller to represent her in a medical malpractice case involving her deceased husband. Later that year, on September 27, 2004, Ms. Miller filed a Chapter 7 Voluntary Petition in the United States Bankruptcy Court in the Northern District of West Virginia. Robert W. Trumble ("Mr. Trumble") was appointed as Interim Trustee of the bankruptcy estate. An order dis-

---

**1.** Reference in this opinion to the West Virginia Rules of Professional Conduct generally will be  by "the Rules" or specifically by "Rule ___."

charging Ms. Miller was entered on December 21, 2004.

On January 11, 2005, Mr. Trumble wrote to Mr. Burke to advise him that he, Mr. Trumble, had been appointed trustee of Ms. Miller's bankruptcy estate and to request a valuation of the medical malpractice case in which Mr. Burke was representing Ms. Miller. Mr. Burke replied by letter dated January 25, 2005, that the medical malpractice claim was being reviewed by Mr. Burke's co-counsel, Barry J. Nace ("Mr. Nace"),[2] and that a valuation of the case could not be made prior to the completion of a medical review.

Mr. Trumble proceeded to send Mr. Burke and Mr. Nace separate letters on January 27, 2005, containing affidavits for both men to sign to accept employ as special counsel for the bankruptcy estate by the trustee, Mr. Trumble. Both Mr. Burke and Mr. Nace signed and returned the affidavits to Mr. Trumble. On March 3, 2005, Mr. Trumble filed the applications for the authorization to employ Mr. Burke and Mr. Nace as special counsel, and by order this request was granted the following day by the bankruptcy court.

Mr. Nace filed a complaint in Ms. Miller's medical malpractice claim in the Circuit Court of Berkeley County, West Virginia, on June 17, 2005. The complaint named multiple defendants. On July 25, 2005, Mr. Burke notified Ms. Miller that he was withdrawing from her case because of a conflict of interest,[3] but that Mr. Nace would continue to serve as her counsel in the matter. Mr. Burke did not provide the bankruptcy court or Mr. Trumble with notice of his withdrawal as counsel, nor did he submit a motion to withdraw.

In September of 2006, a partial settlement was reached with one of the defendants named in Ms. Miller's medical malpractice suit. The settlement totaled $75,000, and the proceeds were distributed without the approval, authority, or knowledge of the bankruptcy estate's trustee, Mr. Trumble. On October 30, 2006, Ms. Miller's case proceeded to jury trial against the remaining defendants. The jury returned a verdict awarding judgment in Ms. Miller's favor in the amount of $500,000, and judgment was entered on January 4, 2007. Mr. Burke did not participate in the trial of the case, nor did he participate in the subsequent appeal.[4]

On July 27, 2007, Mr. Trumble sent a letter to Mr. Burke requesting an update on the status of Ms. Miller's medical malpractice claim. On August 8, 2007, Mr. Burke forwarded this letter to Mr. Nace's office. Mr. Burke also phoned Mr. Trumble's office and left a message with Mr. Trumble's assistant that he, Mr. Burke, was no longer representing Ms. Miller and to contact Mr. Nace's office.

On March 5, 2008, Mr. Nace sent Ms. Miller a check for $220,467.45 which represented Mr. Nace's calculation of her share from the proceeds of the medical malpractice case. Again, the distribution of these proceeds was made without the approval, authority, or knowledge of Mr. Trumble. Upon discovering that the case had been resolved, Mr. Trumble sent a letter to Mr. Burke and Mr. Nace on October 10, 2008, requesting copies of all documents related to the settlement amount and jury award. In the letter, Mr. Trumble informed Mr. Burke and Mr. Nace that he would attempt to recover any of the distributed proceeds that were improperly paid out to Ms. Miller, and he noted that both men were employed as special counsel to him.

Mr. Trumble filed the instant ethics complaint against Mr. Burke because of the distribution of the proceeds from the medical malpractice case without the knowledge or permission of the bankruptcy estate. Mr. Trumble also filed an ethics complaint against Mr. Nace on the same grounds. On October 5, 2010, Mr. Trumble filed a complaint against Mr. Burke and Mr. Nace in the United States Bankruptcy Court for the

---

2. Mr. Nace is an attorney practicing in Washington, D.C., with the law firm Paulson & Nace. He is licensed to practice law in West Virginia, and he has previously worked with Mr. Burke on medical malpractice cases.

3. An employee at Mr. Burke's firm was the neighbor of one of the named defendants.

4. This Court refused the appeal by an order entered on February 12, 2008.

Northern District of West Virginia alleging breach of contract and legal negligence as to the proceeds from the medical malpractice case.

Regarding the ethics complaint that gave rise to the proceedings now before this Court, a hearing was held before the HPS on October 10, 2011.[5] Mr. Burke, Mr. Nace, and Mr. Trumble testified at the hearing, and exhibits were submitted by both Mr. Burke and the complainant, the Office of Disciplinary Counsel. Following the hearing, the HPS dismissed the charges against Mr. Burke for violations of Rules 1.5(a),[6] 1.15(b),[7] 8.4(c), and 8.4(d).[8] The HPS found by clear and convincing evidence that Mr. Burke had violated Rules 1.3,[9] 1.4(a), and 1.4(b).[10]

Upon its finding that Mr. Burke violated the Rules, the HPS recommended that Mr. Burke be admonished for his conduct, that he satisfy any obligations imposed on him in the pending adversary proceeding filed by Mr. Trumble, and that he be ordered to pay the costs of the proceedings before the HPS pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

## II.

### STANDARD OF REVIEW

██ Regarding determinations of ethics violations and the appropriate sanctions, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspen-

sions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). The standard of review in lawyer disciplinary cases is well settled:

"A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and question of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

Syl. pt. 2, *Lawyer Disciplinary Board v. Morgan*, 228 W.Va. 114, 717 S.E.2d 898 (2011). In this case, Mr. Burke requests that this Court find that his behavior was simple negligence and not an ethics violation. We apply a *de novo* standard of review to this question of law. We also apply a *de novo* standard of review to the question of appropriate sanctions against Mr. Burke.

## III.

### ANALYSIS

██ Mr. Burke argues that while he was negligent by not filing a motion to withdraw,

---

5. The HPS granted a motion to allow the proceedings against Mr. Burke and Mr. Nace to be heard simultaneously. The HPS also denied Mr. Burke's motion to dismiss the ethics complaint against him.

6. Rule 1.5(a) addresses the reasonableness of attorney fees.

7. Rule 1.15(b), dealing with the safekeeping of property, states,

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

8. Under Rule 8.4., it is professional misconduct for a lawyer to "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation" and "(d) engage in conduct that is prejudicial to the administration of justice."

9. Rule 1.3. states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

10. Rule 1.4, regarding communication between attorneys and clients, states,

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

his behavior did not rise to an ethics violation. Mr. Burke quotes *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 653, 226 S.E.2d 427, 430 (1976), *overruled on other grounds by Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993), in support of his position: "Charges of isolated errors of judgment or malpractice in the ordinary sense of negligence would normally not justify the intervention of the ethics committee." Mr. Burke posits that his behavior is the type of isolated occurrence of negligence that would forbid the LDB's involvement.

We disagree with Mr. Burke and find that his behavior gave rise to ethics violations. As special counsel for the trustee of the bankruptcy estate, Mr. Burke had a duty to Mr. Trumble[11]; Mr. Trumble had a reasonable expectation that Mr. Burke would represent the interests of the estate. Mr. Trumble relied on Mr. Burke to his detriment, and now the bankruptcy estate has been forced to seek civil action to recoup what Mr. Trumble contends is a substantial sum of money. Therefore, this Court finds that Mr. Burke has violated Rule 1.15. Mr. Burke has also violated Rules 1.3 and 1.4 in that he did not diligently pursue the interests of his client and that he did not keep his client apprised of important occurrences in the malpractice suit, such as the partial settlement or the outcome of the malpractice litigation.[12]

█ The Court has held that analysis of the proper sanctions involves consideration of four factors:

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Su-

preme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998). Furthermore,

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).

Mr. Burke violated a duty to his client, and the potential injury to the bankruptcy estate is great. However, Mr. Burke did not act intentionally, and there is only one aggravating factor recognized by the HPS,[13] and there are numerous mitigating factors.[14] Upon consideration of the law set forth in *Jordan* and *Walker,* this Court deems that admonishment is a proper punishment for Mr. Burke, that it will serve as the proper deterrent to others in the legal profession, and that it will restore public faith in the profession. Therefore, this Court adopts the recommended sanctions of the HPS.

---

11. Mr. Burke, as of the date this case was submitted, had still not formally withdrawn as special counsel for the trustee of the bankruptcy estate.

12. This Court does not agree with the LDB's contention that Mr. Burke's August 2007 phone call to Mr. Trumble's office was insufficient to apprise Mr. Trumble of Mr. Burke's withdrawal.

13. The HPS found that the only aggravating factor present is Mr. Burke's substantial experience in the practice of law.

14. The HPS stated that the mitigating factors present include the absence of a prior disciplinary record, full cooperation in the disciplinary matter, an excellent professional reputation, lack of a selfish or dishonest motive, and an expression of remorse for the misconduct.

## IV.

## CONCLUSION

For the foregoing reasons, the Court adopts the recommendations presented by the HPS in its March 21, 2012, report, imposing the following discipline upon Mr. Burke: he is admonished, he must satisfy any obligations imposed on him in the pending adversary proceeding filed in bankruptcy court, and he is ordered to pay the costs of the proceedings before the HPS pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Recommendations Adopted.

Chief Justice KETCHUM and Justice WORKMAN dissent and reserve the right to file separate opinions.

KETCHUM, Chief Justice, dissenting:

I dissent, because nothing lawyer Burke did came close to being an ethical violation. The majority skirted around our case law applicable to the facts of this case that has existed since 1976.[1]

Mr. Burke and Mr. Nace represented a client in a medical negligence case. After the client filed bankruptcy, the bankruptcy trustee hired them to continue to pursue the case. They filed the lawsuit and Mr. Burke discovered that his partner's neighbor was a defendant in the lawsuit. He did the ethical thing and withdrew as one of the lawyers. He told his *de facto* client, but he forgot to notify his *de jure* client, the bankruptcy trustee. Mr. Nace, the co-counsel, continued with the case and got a settlement and jury verdict in the malpractice action. Mr. Burke played no part in distributing the settlement or jury verdict money. He received no fee. It appears the money was not paid to the bankruptcy trustee as required by law.

There is a difference between negligence and ethical misconduct. For an attorney of lawyer Burke's quality, that distinction is not irrelevant. The only thing lawyer Burke did incorrectly was fail to notify the trustee of his withdrawal from the case. This was, at most, simple negligence.

The problem with the majority's opinion is that it fails to define disciplinable incompetence with any clarity so as to allow for predictability. Single lawyer slipups are generally not ethical violations. They may expose the lawyer to professional negligence liability, but it has nothing to do with the lawyer's ethics. Discipline should only be imposed when the lawyer's error is intentional, reckless, repeated, or accompanied by some other misconduct like concealment.

One commentator suggests that a "lawyer's isolated act of professional negligence, and even an isolated breach of fiduciary duty," generally should not "raise the issue of whether the lawyer is fit to practice law. However, professional incompetence that is intentional, reckless, or repeated does implicate the lawyer's fitness to practice, and therefore, is a proper subject of discipline[.]'" Robert Kehr, "Lawyer Error: Malpractice, Fiduciary Breach, or Disciplinable Offense?," 29 W.St.U.L.Rev. 235, 260 (Spring, 2002).

Numerous cases and treatises support the position that an isolated act of negligence does not raise an issue of whether the lawyer is fit to practice law. *See, e.g., In re Complaint as to Conduct of Gygi*, 273 Or. 443, 541 P.2d 1392, 1396 (1975) (stating "we are not prepared to hold that isolated instances of ordinary negligence are alone sufficient to warrant disciplinary action"); *The Florida Bar v. Neale*, 384 So.2d 1264, 1265 (Fla.1980) (the "rights of clients should be zealously guarded by the bar, but care should be taken to avoid the use of disciplinary action . . . as a substitute for what is essentially a malpractice action"); *Attorney Grievance Comm'n of Maryland v. Kemp*, 335 Md. 1, 10–18, 641 A.2d 510, 514–18 (1994) ("Trivial errors, which, when viewed individually, would not

---

1. In *Committee on Legal Ethics of West Virginia State Bar v. Mullins*, 159 W.Va. 647, 653, 226 S.E.2d 427, 430 (1976), we said:

Misconduct or malpractice consisting of negligence or inattention, in order to justify suspension or annulment, must be such as to show the attorney to be unworthy of public confidence and an unfit or unsafe person to be entrusted with the duties of a member of the legal profession or to exercise its privileges. Charges of isolated errors of judgment or malpractice in the ordinary sense of negligence would normally not justify the intervention of the ethics committee.

sustain a finding of incompetent representation, when viewed collectively or cumulatively can have that effect.... While we do not condone, and certainly do not encourage, attorney negligence or carelessness in the handling of client affairs, neither do we routinely treat negligence or carelessness as a violation of the Rules of Professional Conduct."); *Matter of Curtis*, 184 Ariz. 256, 908 P.2d 472, 477–78 (1995) ("Neither failure to achieve a successful result nor mere negligence in the handling of a case will necessarily constitute an [ethical] violation. We recognize the important distinction between conduct by an attorney that is simply negligent and conduct that rises to the level of an ethical violation. Clearly, the Bar must be vigilant in guarding the rights of clients, but care should be taken to avoid the use of disciplinary action ... as a substitute for what is essentially a malpractice action."); *Disciplinary Board v. McKechnie*, 656 N.W.2d 661, 666 (N.D., 2003) ("Disciplinary proceedings differ significantly, both procedurally and substantively, from civil legal malpractice actions." Because the evidence showed the lawyer committed "nothing more than an isolated instance of ordinary negligence, or error of judgment," the court found "no clear and convincing evidence" of ethical violation); *In re Disciplinary Action Against Hoffman*, 703 N.W.2d 345 (N.D.2005) (same). *See also*, 1 R. Mallen and J. Smith, *Legal Malpractice*, § 1.9, at p. 45 (5th ed. 2000) ("[o]rdinary negligence should not warrant discipline"); C. Wolfram, *Modern Legal Ethics*, § 5.1, at p. 190 (1986) ("[T]he enforcement of competence standards has been generally limited to relatively exotic, blatant, or repeated cases of lawyer bungling.... Most decisions and official ABA policy insist that a single instance of 'ordinary negligence' is usually not a disciplinary violation[.]")

In 1976, our Court plainly said that an isolated negligent act will not justify the intervention of the ethics committee. Failing to notify the bankruptcy trustee did not make lawyer Burke unworthy of public confidence or an unfit or unsafe lawyer, as the majority opinion seems to suggest. It was an inadvertent slip.

I dissent because the majority opinion makes no distinction between a mistake and ethical misconduct. As a result, lawyers had better be careful. Deed lawyers, for instance, had better be extra careful. If they now inadvertently leave a word out of a metes and bounds description, they are subject to the whims of the Office of Disciplinary Counsel.

I am authorized to state that Justice Workman joins in this dissent.